**BOIES SCHILLER FLEXNER LLP**
JEFFREY HAMMER, State Bar No. 264232
  *jhammer@bsfllp.com*
725 South Figueroa Street, 31st Floor
Los Angeles, California 90017-5524
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

Alan B. Vickery (*pro hac vice application pending*)
  *avickery@bsfllp.com*
John F. LaSalle (*pro hac vice application pending*)
  *jlasalle@bsfllp.com*
55 Hudson Yards
New York, New York 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

Attorneys for Defendant
ADAM ROSEMAN

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TONY BOBULINSKI, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ADAM ROSEMAN, an individual; and DOES 1 through 20,<br><br>Defendants. | Case No. 2:19-cv-02963-MWF-SSx<br><br>**DEFENDANT ADAM ROSEMAN'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[Declaration of John F. LaSalle with Exhibits; Request for Judicial Notice; and [Proposed] Orders filed concurrently herewith]**<br><br>Judge Michael W. Fitzgerald<br>**Date:**  June 3, 2019<br>**Time:**  10:00 a.m.<br>**Courtroom:**  5A |

BOIES SCHILLER FLEXNER LLP

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on June 3, 2019, at 10:00 a.m., or as soon thereafter as this matter may be heard, in the courtroom of the Honorable Michael W. Fitzgerald, located in the First Street Courthouse, 350 West First Street, Courtroom 5A, Los Angeles, California 90012, Defendant Adam Roseman will and hereby does move this Court to dismiss Plaintiff Tony Bobulinski's Complaint, and all claims asserted therein, for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This Motion is based upon the following grounds:

*First*, the Complaint fails because Bobulinski was granted a security interest in the Collateral;

*Second*, the Complaint fails because the definition of "Collateral" in the pledge agreement extends to assets that China Branding Group would acquire "from time to time," including the assets of the related entity, RAAD. The Complaint alleges that China Branding Group acquired these assets.

*Third*, the Complaint fails to plausibly allege damages.

*Fourth*, the Complaint fails to plausibly allege misrepresentation.

*Fifth*, the Complaint fails to plausibly allege causation.

*Sixth*, the Complaint fails to plausibly allege that Roseman owed a fiduciary duty to Bobulinski.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of John F. LaSalle and the exhibits thereto filed concurrently herewith, the Request for Judicial Notice filed concurrently herewith, all of the pleadings and other documents on file in this case, all other matters of which the Court may take judicial notice, and any further argument or evidence that may be received by the Court at hearing. Counsel for

BOIES SCHILLER FLEXNER LLP

1  Roseman attempted to meet and confer with counsel for Bobulinski on April 23,
2  2019 and were unable to do so.  *See* LaSalle Declaration ¶ 3.

3
4  DATED:      April 24, 2019          BOIES SCHILLER FLEXNER LLP
                                       ALAN B. VICKERY
5                                      JOHN F. LASALLE
                                       JEFFREY HAMMER
6
7                                      By:___*/s/* Jeffrey Hammer_____
8                                            JEFFREY HAMMER
                                       Attorneys for Defendant
9                                      ADAM ROSEMAN
10

B O I E S   S C H I L L E R   F L E X N E R   L L P

1

## **TABLE OF CONTENTS**

2

**Page**

3

4    I.    INTRODUCTION ................................................................................. 1

5    II.    STATEMENT OF FACTS .................................................................. 4

6    A.    Bobulinski and CBG Enter into the Note, the Pledge Agreement, and the

7    Amendment. ........................................................................................ 4

8    B.    CBG Sells Its Assets In a Court-Approved Sale to Remark ............ 7

9    C.    Bobulinski Presses His Multiplier Claim in the Caymans and Loses. ........... 8

10    D.    Bobulinski Files the Instant Suit. ................................................... 10

11    III.    ARGUMENT ................................................................................. 10

12    A.    Standard ......................................................................................... 10

13    B.    Summary of Argument .................................................................... 11

14    C.    The Claims for Fraud in the Inducement and Negligent Misrepresentation

15    Must Be Dismissed. ......................................................................... 12

16    1.    The Complaint Fails Because Bobulinski Was Granted Security Interest in

17    the Collateral. ........................................................................... 13

18    2.    The Terms of the Pledge Agreement and the Availability of Contractual

19    Remedies Confirm that Bobulinski Has Not Been Defrauded. ................. 14

20    3.    The Complaint Fails to Allege Resulting Damages. ............................... 16

21    4.    The Complaint Fails to Plausibly Allege a Misrepresentation. ................ 17

22    5.    The Complaint Fails to Plausibly Alleged Causation ............................. 20

23    i.    The Harm, If Any, Was Caused By Alleged Contractual Failures ............ 20

24    ii.    The Harm, If Any, Was Caused by Bobulinski's Status as Shareholder, as

25    Determined by the Cayman Judgment. ............................................... 21

26    D.    The Breach of Fiduciary Duty Claim Must Be Dismissed. ....................... 23

27    IV.    CONCLUSION ............................................................................... 25

28

DEFENDANT ADAM ROSEMAN'S MOTION TO DISMISS

BOIES SCHILLER FLEXNER LLP

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009)................................................................11, 17

*Beckwith v. Dahl*, 205 Cal.App.4th 1039 (2012) ........................................16, 17, 20

*Berg & Berg Enterprises, LLC v. Boyle*, 178 Cal.App.4th 1020 (2009)...................24

*Charnay v. Cobert*, 145 Cal.App.4th 170 (2006) ....................................................13

*City of Hope National Medical Center v. Genentech, Inc.,* 43 Cal.4th 375 (2008) ..23

*DCH Health Servs. Corp. v. Waite*, 95 Cal.App.4th 829 (2002) .............................24

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990 (9th Cir. 2014)........................................................................................................................10

*Goehring v. Chapman Univ.*, 121 Cal.App.4th 353 (2004) .....................................23

*Gonzalez v. Wells Fargo Bank, N.A.,* 2016 WL 10987345 (C.D. Cal. Nov. 9, 2016) ................................................................................................................................19

*Hands on Video Relay Servs., Inc. v. Am. Sign Language Servs. Corp.,* 2009 WL 8691614 (E.D. Cal. Aug. 12, 2009)......................................................................23

*Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615 (N.D. Cal. 2002) .......................................16

*In re Stephanie M.*, 7 Cal.4th 295 (1994), *as modified on denial of reh'g (*May 12, 1994)........................................................................................................................21

*In re WL Homes*, 534 F. App'x 165 (3d Cir. 2013) ................................................13

*K.N.C. Wholesale, Inc. v. Awmco, Inc.,* 56 Cal.App.3d 315 (1976) ........................13

*Kruse v. Bank of America*, 202 Cal.App.3d 38 (1988).............................................23

*Lazar v. Superior Court*, 12 Cal.4th 631 (1996) ................................................16, 17

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ....................................4, 11

*Leslie Fram v. Memory Enterprises, LLC, et al.*, 2018 WL 5903920 (C.D. Cal. Aug. 21, 2018)........................................................................................................11, 12, 23

*Lovejoy v. AT&T Corp.*, 92 Cal.App.4th 85 (2001) ................................................12

*Lyon v. FUNimation Productions Ltd.*, 2013 WL 12122229 (C.D. Cal. Nov. 5, 2013)........................................................................................................................16

*McQuillion v. Schwarzenegger,* 369 F.3d 1091 (9th Cir.2004) ................................22

*Oasis W. Realty, LLC v. Goldman*, 51 Cal.4th 811 (2011) ........................................23

*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.*, 157 Cal.App.4th 835 (2007) ........................................................................................20

*Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413 (C.D. Cal. 2012) ....................12, 13

*Robinson v. Brown,* 2014 WL 1779460 (E.D. Cal. May 5, 2014) ............................21

*Small v. Fritz Companies, Inc.*, 30 Cal.4th 167 (2003) ....................................16, 17

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) ..........................10

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) ................................................11

*Wolf v. Superior Court*, 107 Cal.App.4th 25 (2003) ................................................24

Case No. 2:19-cv-02963-MWF-SSx

DEFENDANT ADAM ROSEMAN'S MOTION TO DISMISS

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiff Tony Bobulinski ("Bobulinski") is a putative creditor of China Branding Group Limited ("CBG"), an entity currently in liquidation in the Cayman Islands.  In April 2015, Bobulinski loaned CBG $650,000, and in 2017 the court-appointed joint official liquidators of CBG ("the JOLs") found that Bobulinski is owed this same amount from the estate.  Bobulinski appears to believe that he is owed an amount in excess of several times his $650,000 investment, and thus he sued the JOLs in Cayman bankruptcy court to press his "multiplier" claim for two and a half times his loan (or $1,625,000).

Bobulinski has had his day in court, however, and he lost.  On January 23, 2019, the Grand Court of the Cayman Islands denied Bobulinski's claim in its entirety.  The Grand Court found that Bobulinski failed to establish the existence of a proof of debt in the liquidation.  The Grand Court found that under the terms of his promissory note, Bobulinski's "multiplier claim" derived from his standing as a shareholder of CBG and that under Cayman law, shareholders cannot pursue claims as creditors.  Therefore, the Grand Court dismissed Bobulinski's appeal because of Bobulinski's standing as a shareholder (and not having anything to do with the ownership of the collateral that secured his loan).  Importantly, Bobulinski's allowed claim in the CBG liquidation proceeding for $650,000—that balance of his promissory note—remains intact.

Unhappy with this result, Bobulinski has now filed suit against CBG's former Chief Executive Officer, Adam Roseman.  Roseman was not a party to the Cayman proceeding and does not control the JOLs or CBG.  In this action, Bobulinski argues for the first time that he was somehow deceived into making the $650,000 loan (even though mere months ago Bobulinski urged the Grand Court to reward him

DEFENDANT ADAM ROSEMAN'S MOTION TO DISMISS

BOIES SCHILLER FLEXNER LLP

1  with a $1,625,000 claim on the basis of the very loan he now says he was

2  fraudulently induced to enter).

3       The gist of the Complaint is that Bobulinski believed that his loan would be

4  secured by all of the assets of CBG in the United States but the only assets of CBG

5  that the pledge agreement specifically identified (the "content library, license

6  agreements, and physical assets, such as production equipment") were owned by a

7  CBG-related company, RAAD Productions LLC ("RAAD"), and not by CBG.  On

8  the basis of this alleged misunderstanding— which according to the Complaint was

9  **shared by both Bobulinski and Roseman**—Bobulinski weaves a tale of fraudulent

10  inducement that comes apart at its seams. The Complaint should be dismissed.

11       <u>First</u>, as argued by Bobulinski himself in the Cayman liquidation proceeding,

12  Bobulinski was granted a security interest in the collateral.  Under California law, a

13  pledge by a parent company of assets held by an affiliated entity is enforceable

14  where the entities share the same senior management at the time that the pledge was

15  made.  That is precisely the situation here.

16       <u>Second</u>, the terms of the pledge agreement itself are inconsistent with

17  Bobulinski's theory of harm.  The pledge agreement itself contemplated that the

18  collateral would *include* assets that CBG would acquire "from time to time."  In

19  addition, CBG agreed to a "Further Assurances" clause that included CBG's

20  obligation to obtain "agreements from third parties," such as RAAD.  The

21  combination of these provisions shows that the parties contemplated that further

22  steps may need to be taken to perfect Bobulinski's security interest in the content

23  library, license agreements, and production equipment.  Furthermore, it is

24  undisputed that the purchaser of CBG's assets, Remark Holdings LLC ("Remark"),

25  acquired all of the assets of RAAD through the asset purchase agreement and did so

26  with full knowledge of CBG's obligations to Bobulinski in both the pledge

27  agreement and the note.  Thus, the existence of contractual remedies regarding the

28

ownership of the collateral confirms that Bobulinski has not been deprived of any opportunity and also makes it implausible that Roseman misled Bobulinski regarding this very issue.

Third, the Complaint fails to plausibly allege damages. Bobulinski has an allowed claim for $650,000, the full amount of Bobulinski's no-interest bearing note. Any argument that this allowed claim will be insufficient to make Bobulinski whole is entirely speculative given that the liquidation is still ongoing and Bobulinski's claim is senior in the waterfall.

Fourth, the Complaint fails to plausibly allege a misrepresentation. The Complaint affirmatively alleges, using Roseman's testimony from the Cayman proceeding, that there was no doubt in Roseman's mind that the pledge agreement was intended to create a security interest in Bobulinski's favor and that the collateral included CBG's content library and license agreements. Indeed, in the testimony immediately following what is cited in the Complaint, Roseman testified that CBG had a significant content library and license agreement in the United States, as did its subsidiary RAAD. These statements, which are incorporated by reference in the Complaint, make it implausible that Roseman either intentionally or negligently misrepresented the ownership of the collateral.

Fifth, the Complaint fails to plausibly plead causation. Plaintiff must plead a complete causal relationship between the alleged misrepresentation and the harm claimed to result therefrom. Here, the chain of causation is interrupted at least twice. In the first instance, any alleged harm that Bobulinski may suffer in the future due to his status as an unsecured creditor for $650,000 would have been caused by CBG's alleged failure to take contractual steps contemplated by the pledge agreement to protect Bobulinski's security interest, not by any statements by Roseman. At most, Bobulinski may have a potential breach claim against CBG but steps can be taken by CBG to remedy that breach.

BOIES SCHILLER FLEXNER LLP

BOIES SCHILLER FLEXNER LLP

In the second instance, Bobulinski's standing as a shareholder of CBG precludes his claim for any amount over $650,000.  The Grand Court that after the Maturity Date the loan amount effectively converted into equity securities of CBG, and Bobulinski therefore lacked standing to pursue any amount from the estate of CBG over the $650,000 claim that has already been allowed.  Indeed, the Grand Court looked at the issue of whether the content library and license agreements were owned by CBG or RAAD and, while noting that it "accepts the validity of the argument made by the JOLs on this aspect of the case," the Grand Court explained that in practice it "will not prove necessary for this Court to resolve the entire case on such an arcane basis."  LaSalle Decl. Ex. 1 ("Cayman Judgment") ¶¶ 232-235.[1] That is because Bobulinski's status as shareholder (or notional shareholder) precluded his claims as a creditor.  Thus, the harm, if any, that Bobulinski may suffer has nothing to do with the alleged misunderstanding regarding which entity owned the content library, license agreements, and physical equipment.

Sixth, the breach of fiduciary duty claim fails for the simple reason that the Complaint fails to plausibly allege that Roseman owed a fiduciary duty to Bobulinski.

For the foregoing reasons, the Complaint should be dismissed with prejudice.

## II.    STATEMENT OF FACTS

### A. Bobulinski and CBG Enter into the Note, the Pledge Agreement, and the Amendment.

Bobulinski and CBG entered into a promissory note (the "Note") and pledge agreement (the "Pledge Agreement") on or about April 15, 2015.  Compl. ¶ 15. Pursuant to the Note, Bobulinski loaned CBG $500,000.  On April 11, 2016,

---

[1] As discussed *infra*, the Court may consider documents incorporated by reference into the Complaint on a motion to dismiss. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  Furthermore, Roseman has filed a Request for Judicial Notice for the Cayman Judgment.

Bobulinski signed an amendment to the Note reflecting the increase in the loan amount from $500,000 to $650,000.  *Id.* ¶ 29.  Bobulinski and CBG are the only parties to the Note, the Pledge Agreement, and the amendment.  Roseman is not a party to those agreements.

The Note provided for the conversion of the Principal Loan Amount (initially $500,000 and then increased to $650,000) in three scenarios, depending upon whether certain conditions had been met prior to the Maturity Date (April 14, 2016):

- <u>Conversion Upon Liquidity Event</u>: If a "Liquidity Event" (defined to include, among other things, a sale of substantially all of the assets of CBG) occurred before the Maturity Date, the Principal Loan Amount would automatically convert into a new class of preferred equity securities with an initial liquidation preference of two and a half times the aggregate Principal Loan Amount.  *See* LaSalle Decl. Ex. 2, Note ¶ 3.1.

- <u>Payment Upon Financing</u>: If a bona fide equity financing of CBG was consummated before the Maturity Date, CBG would have to pay Bobulinski two and a half times the Principal Loan Amount in cash on the Maturity Date.  *See id.* ¶ 3.2

- <u>Conversion After Maturity</u>:  "If neither (a) a Liquidity Event nor (b) a bona fide equity financing of the Borrow has been consummated on or before the Maturity Date, then the Principal Loan Amount shall convert into equity securities of the Borrower on terms and conditions to be negotiated in good faith by the Borrower and the Noteholder."  *See id.* ¶ 3.3.

The Principal Loan Amount does not bear interest.  *Id.* ¶ 5.

In sum, there were three potential scenarios for the $650,000 to be converted: (a) if there were a liquidity event prior to the Maturity Date, the loan amount would be converted into a new equity series with a 2.5X initial liquidation preference; (b) if there were an equity financing prior to the Maturation Date, CBG would owe Bobulinski 2.5X the loan amount (total of $1,625,000) in cash; and (c) if the Maturity Date occurred prior to a liquidity event or an equity financing, then the

1  $650,000 would convert into equity securities of CBG on terms to be negotiated by

2  CBG and Bobulinski.  *Id.* ¶¶ 3.1-3.3.

3       CBG's performance of obligations under the Note was secured by a first

4  priority security interest in the "collateral" specified in the Pledge Agreement.  The

5  Pledge Agreement states:

> The Pledgor [CBG] hereby pledges, assigns and grants to the Secured Party [Bobulinski] as primary obligor and not merely as surety, and hereby creates a continuing first priority lien and security interest in favor of the Secured Party in and to all of its rights, benefit and interest in and to the following, wherever located, **whether now existing or hereafter from time to time arising from or acquired** (collectively, the '**Collateral**'): (a) all assets (including intangible assets) of the Pledgor in the United States, including without limitation its content library, license agreements, and physical assets, such as production equipment.

12  LaSalle Decl. Ex. 3, Pledge Agreement ¶ 2 (emphasis added).  On its face, the

13  Pledge Agreement defined the Collateral to include *all assets* of CBG, including

14  existing assets and assets "hereinafter from time to time arising from or acquired."

15  *Id.* Consistent with the fact that the parties intended the Collateral to extend to

16  assets, including its content library, license agreements, and physical assets, such as

17  production equipment that CBG would acquire "from time to time," the Pledge

18  Agreement includes a "Further Assurances" provision, which provides in relevant

19  part:

> The Pledgor agrees that at any time and from time to time, at the expense of the Pledgor, the Pledgor will promptly execute and deliver all further instruments and documents, **obtain such agreements from third parties**, and take all further action, **that may be necessary or desirable in order to perfect** and protect **any security interest granted hereby** or to enable the Secured Party to exercise and enforce its rights and remedies hereunder, under the Note, or under any other agreement related to any Collateral.

25  Pledge Agreement ¶ 6(b) (emphasis added).

26       CBG was represented by Sheppard Mullin, and Bobulinski was not

27  represented by counsel.  Note ¶ 10.1.  The Note contains the following integration

28

BOIES SCHILLER FLEXNER LLP

clause: "This Note and the Pledge Agreement constitute the entire contract between the Parties with respect to the subject matter hereof and supersede all previous agreements and understandings, oral and written, with respect thereto."

Bobulinski was one of eight noteholders who entered into promissory notes with CBG starting in or about April 15. Compl. ¶ 27. The Complaint does not allege that Bobulinski conducted any due diligence into CBG's assets.

**B. CBG Sells Its Assets In a Court-Approved Sale to Remark**

CBG was placed in provisional liquidation in the Cayman Islands on June 2, 2016. *See* Cayman Judgment ¶ 17. CBG was placed into formal liquidation on August 18, 2016. *See id.* ¶ 18. Roseman ceased his responsibilities as Chief Executive Officer, and the JOLs took over the day to day operations of CBG. *See id.*

On September 20, 2016, the JOLs (acting on behalf of CBG) and Remark Holdings, Inc. and KanKan Limited, among others, entered into a Second Amended and Restated Asset and Securities Purchase Agreement. LaSalle Decl. Ex. 4 ("Purchase Agreement"). Prior to entering the Purchase Agreement, RAAD became a subsidiary of CBG. Compl. ¶ 34. Pursuant to the Purchase Agreement, Remark purchased all of the assets of CBG, including the assets of RAAD that CBG owned through its ownership of all outstanding shares of RAAD.

The Complaint admits that RAAD became a subsidiary of CBG prior to the sale to Remark. *See* Compl. ¶ 34 ("Those assets were owned by RAAD, which later became a subsidiary of Remark. To be clear, CBG only owned shares of RAAD for a short time in order to complete the sale of CBG to Remark, several months after Bobulinski and CBG entered into the Note."). The Disclosure Schedule to the Purchase Agreement states, "All of the equity securities of RAAD are in process of being transferred from the current shareholders of RAAD to the Seller, which process will be completed prior to closing." Purchase Agreement Disclosure

1   Schedule § 4.02.  Furthermore, the Cayman Judgment states, "In addition, the shares

2   in RAAD, which was outside of the Group, were transferred to the Company [CBG]

3   on 19 September 2016 for US$10, and then immediately sold by the Company to the

4   Buyer [Remark]."  Cayman Judgment ¶ 22.[2]

5       The Note and Pledge Agreement were disclosed by the JOLs to Remark.

6   Specifically, Section 4.11(iii) of the Disclosure Schedule stated: "All assets

7   (including intangible assets) of Seller in the United States, including without

8   limitation its content library, license agreements, and physical assets, such as

9   production equipment, were pledged to certain of Seller's creditors.  To Seller

10  Management's knowledge, no such pledge was ever perfected."  Purchase

11  Agreement Disclosure Schedule § 4.11(iii).  Tony Bobulinski is identified as one of

12  those creditors.  *Id.*  Section 4.10 (Material Contracts) also identifies a $650,000

13  loan to Tony Bobulinski and identifies both the Note and the Pledge Agreement in

14  connection with the loan.  *Id.* § 4.10.

15      Prior to the sale to Remark, Bobulinski took no steps to perfect his security

16  interest.  Prior to entering the Note, Bobulinski took no steps to confirm the

17  ownership of the Collateral.

18      **C. Bobulinski Presses His Multiplier Claim in the Caymans and**

19          **Loses.**

20      Bobulinski submitted a "proof of debt" in the CBG liquidation for

21  $1,625,000, and continues to allege that he is entitled to receive this amount from

22  CBG.  Compl. ¶ 35.  However, the JOLs have rejected Bobulinski's proof of debt,

23

24  _____

25  [2] To the extent that the Complaint appears to allege that CBG itself never owned the
    relevant license agreements and content library identified in the Pledge Agreement

26  (see Paragraphs 33 and 34 of the Complaint), the Complaint appears to be alleging
    that CBG never directly owned those assets; rather, they were owned indirectly

27  because all of the shares of RAAD were transferred to CBG prior to the sale
    (Compl. ¶ 34).

28

BOIES SCHILLER FLEXNER LLP

1  finding that Bobulinski is owed a balance of $650,000.[3]  *Id.* ¶ 36.  Bobulinski

2  appealed the JOLs' determination to the Grand Court of the Cayman Islands in a

3  proceeding entitled *In the Matter of China Branding Group Limited (In Official*

4  *Liquidation)*, Cause No. FSD 52 of 2016 (RMJ) (the "Cayman Proceeding").  *Id.*

5       Roseman is not a party to the Cayman Proceeding.  He did, however, provide

6  an affidavit and was also subject to cross examination by Bobulinski's counsel.  The

7  Complaint selectively cites Roseman's testimony (discussed below).

8       On January 23, 2019, the Grand Court issued a judgment denying

9  Bobulinski's appeal in its entirety.[4]  The Grand Court found that Bobulinski was not

10  entitled to his "multiplier claim" because there was no "Liquidity Event" or equity

11  financing prior to the Maturity Date (April 14, 2016) (thus negating any additional

12  recovery in the grounds of Paragraphs 3.1 and 3.2 of the Note).  Cayman Judgment

13  ¶¶ 39, 41, 259.  The Grand Court also found that CBG had not waived the Maturity

14  Date and that Bobulinski failed to prove that CBG promised to pay Bobulinski a

15  two-and-a-half-times return on his investment.  *Id.* ¶¶ 245-250, 251-256.

16       The Grand Court observed that under Cayman law a shareholder cannot lodge

17  a proof of debt.  *Id.* ¶ 257.  Because there was no waiver and no promissory

18  estoppel, any further claim beyond the allowed claim was based on "a right

19  attaching only to shares," which is barred because a shareholder cannot assert a

20  claim as creditor:

---

22  [3] In addition to having an allowed claim for the balance of the Note ($650,000),
23  Bobulinski also has, through his company, Global Investment Ventures LLC, an
    allowed claim for a $224,775 for a "finders' fee" relating to the Remark sale
24  (Cayman Judgment ¶ 24).  Bobulinski also received a Management Incentive
25  Payment in the amount of $99,975 as part of the Remark sale (Schedule IV to
    Purchase Agreement).

26  [4] As discussed below, the Court may consider the Cayman Judgment on this motion
27  to dismiss because the Complaint incorporates it by reference; the Court may take
    judicial notice of a foreign judgment; and the judgment is subject to the doctrine of
28  collateral estoppel.

BOIES  SCHILLER  FLEXNER  LLP

259. The issue raised is one of some novelty.  The Court has found that no waiver took place and no promissory estoppel arose, whereby conversion of shares after a Maturity Date could be impeded or prevented.  In that case, and based upon his accrued or at least notional shareholding, the Appellant as creditor could not make any further claim at all because such right as he claimed was a right attaching only to shares.

260. Accordingly, the Court has formed a view that the paradoxical nature of the Appellant's argument itself renders it entirely hopeless.

*Id.* ¶¶ 259-260.

Earlier in its opinion, the Grand Court looked at the issue of whether the content library and license agreements were owned by CBG or RAAD and, while noting that it "accepts the validity of the argument made by the JOLs on this aspect of the case," the Grand Court explained that in practice it "will not prove necessary for this Court to resolve the entire case on such an arcane basis."  *Id.* ¶¶ 232-235. That is because Bobulinski independently failed to "establish the existence of a debt in the liquidation," *id.* ¶ 262, due to the fact that he was a notional shareholder.

### D. Bobulinski Files the Instant Suit.

Having lost his bid for a claim of $1,625,000 in the Cayman Proceeding, Bobulinski filed the instant action against Roseman, asserting for the first time that he was defrauded into making the very investment that he asserted mere months ago entitled him to 2.5X his loan to CBG.

## III.    ARGUMENT

### A. Standard

In order to survive a motion to dismiss, federal litigants must show more than a mere possible entitlement to relief.  *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).  While all of Bobulinski's material allegations must be taken as true, the Court is not required to accept as true conclusory allegations or unwarranted deductions of fact.  *See, e.g., Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Plaintiffs must plead facts showing that their claim is in fact plausible. *Ashcroft v. Iqbal*, 129 S.Ct. 1937,

1949 (2009).  In addition, where, as here, fraud is alleged, plaintiffs have a higher burden to meet.  Pursuant to Rule 9(B), in order to survive a motion to dismiss, "fraud allegations must include the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Leslie Fram v. Memory Enterprises, LLC, et al.*, 2018 WL 5903920, at *3 (C.D. Cal. Aug. 21, 2018) (Fitzgerald, J.) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)) .

On a motion to dismiss, the Court may consider the allegations in the Complaint and documents incorporated by reference in the Complaint.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (noting that documents not physically attached to a complaint may be considered on a motion to dismiss if their authenticity is not contested and the complaint necessarily relies on them).  In this case, those documents include the Note (*see* Compl. ¶¶ 2, 20-21, 28-29, 35) the Pledge Agreement (*id.* ¶¶ 2, 20-25), the Purchase Agreement (*id.* ¶¶ 32-34), the transcript of Roseman's testimony from the Cayman Proceeding (*id.* ¶¶ 39-40), and the Cayman Judgment (*id.* ¶¶ 35-36).[5]

### B. Summary of Argument

The claims must be dismissed for at least six reasons.  <u>First</u>, the Pledge Agreement is enforceable for the same reasons that Bobulinski urged in the Cayman Proceeding: a pledge by a parent entity of assets owned by an affiliated company is enforceable where the entities share the same management.  <u>Second</u>, the fraud claims are implausible because the definition of "collateral" included assets that CBG would acquire "from time to time," and the Complaint affirmatively alleged that CBG in due course acquired all of the shares of RAAD.  Furthermore, the fact that CBG agreed to a "further assurances" clause and that Remark acquired the

---

[5] The Court may also take judicial notice of the Cayman Judgment as a public record.  *See Lee*, 250 F.3d at 689-90; *see also* Request for Judicial Notice.

assets of RAAD subject to the Pledge Agreement shows that Bobulinski has not been deprived of anything.  <u>Third</u>, the Complaint fails to plausibly allege damages.  Bobulinski has an allowed claim for $650,000, the exact amount that he is entitled to under the Note as determined by the Grand Court.  Any claim that he will be unable to recover this amount is speculative because the liquidation of CBG is ongoing.  <u>Fourth</u>, the Complaint fails to plausibly allege a misrepresentation because the Complaint itself alleges that Roseman believed that the Pledge Agreement created a security interest in the collateral.  <u>Fifth</u>, the Complaint fails to plausibly plead causation.  To the extent that Bobulinski will suffer any harm in the future, that harm would be caused by CBG's failure to take contractual steps to protect Bobulinski's security interest.  Additionally, the Grand Court found that it was Bobulinski's status as shareholder, irrespective of which entity (CBG or RAAD) owned the Collateral, that rendered Bobulinski's appeal "entirely hopeless."  <u>Sixth</u>, the breach of fiduciary duty claim fails because Roseman did not owe a fiduciary duty to Bobulinski.

### C. The Claims for Fraud in the Inducement and Negligent Misrepresentation Must Be Dismissed.

The claims for fraud in the inducement and negligent misrepresentation must be dismissed.  To state a claim for fraud in the inducement, Bobulinski must establish all five of its elements: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Leslie Fram*, 2018 WL 5903920, at *4 (citing *Lovejoy v. AT&T Corp.*, 92 Cal.App.4th 85, 93 (2001)).  Negligent misrepresentation "shares four elements with fraud," but "differs regarding the fifth element: mental state." *Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413, 417 (C.D. Cal. 2012).  Whereas Bobulinski's fraud claim requires a showing that Roseman "made an intentionally false statement,"

BOIES  SCHILLER  FLEXNER  LLP

Plaintiffs' negligent representation claim requires a showing that Roseman "lacked any reasonable ground for believing [his] statement to be true." *Petersen*, 281 F.R.D. 413 at 417 (citing *Charnay v. Cobert*, 145 Cal.App.4th 170, 184 (2006)).

### 1. The Complaint Fails Because Bobulinski Was Granted Security Interest in the Collateral.

The Complaint fails because Bobulinski was granted a security interest in the Collateral, regardless of which entity (CBG or RAAD) owned the collateral. California law permits a parent entity to pledge assets held by an affiliated entity where, as here, the pledger is also an officer of the affiliated entity and thereby gives implied consent to pledge its assets. *See In re WL Homes*, 534 F. App'x 165, 170–71 (3d Cir. 2013) (applying California law to hold that a pledge agreement entered into by a principal, which pledged a security interest in its subsidiary's assets, was enforceable where the individual signing the agreement was both the CFO of the principal and the president of the subsidiary); *K.N.C. Wholesale, Inc. v. Awmco, Inc.,* 56 Cal.App.3d 315, 318–19 (1976) ("the Commercial Code recognizes that a debtor who does not own collateral may nonetheless use the collateral for security, thereby obtaining 'rights in the collateral,' when authorized to do so by the actual owner of the collateral"). Roseman was the CEO of CBG and the sole member or manager of RAAD when he signed the Pledge Agreement. Compl. ¶ 30. Accordingly, a reviewing court must "impute [Roseman's] knowledge of the pledge" to RAAD. *In re WL Homes*, 534 F. App'x at 171. "That knowledge manifests consent" under California law, making the Pledge Agreement enforceable. *Id.* Accordingly, Roseman did not make any misrepresentation in connection with the Pledge Agreement.

This line of argument should be familiar to Bobulinski, as his own lawyers advanced it in the Cayman Proceeding. *See* Cayman Judgment ¶¶ 148-152. In the end, the Grand Court did not need to "resolve the entire case on such an arcane

BOIES SCHILLER FLEXNER LLP

issue." *Id.* ¶ 234.[6]  But the fact that Bobulinski himself has argued that the Pledge Agreement granted Bobulinski a security interest in the Collateral makes it simply implausible that Bobulinski was misled.  It also underscores the reasonableness of Roseman's belief that he had signed an enforceable pledge agreement under California law, especially in light of the fact that he relied on CBG's counsel to put together the agreement.  Compl. ¶¶ 19-20.  Indeed, the fact that Bobulinski has advocated this result negates the plausibility that he was defrauded.

### 2.  The Terms of the Pledge Agreement and the Availability of Contractual Remedies Confirm that Bobulinski Has Not Been Defrauded.

The terms of the Pledge Agreement itself confirm that Bobulinski was not defrauded.  Bobulinski's theory is that he was defrauded because Roseman allegedly represented that the content library, license agreements, and physical equipment were owned by CBG when they were actually owned by CBG's affiliate, RAAD.  However, the Pledge Agreement's definition of "Collateral," which included *all* assets of CBG, was *not* limited to assets currently owned by CBG as of April 15, 2015.  Rather, the Collateral *included* all assets of CBG "whether now existing or hereafter from time to time arising or acquired."  Pledge Agreement, ¶ 1.  The Complaint affirmatively alleges that RAAD became a subsidiary of CBG prior to the sale of CBG's assets to Remark, and that CBG owned all the shares of RAAD prior to the sale.  *See* Compl. ¶ 34.  Therefore, the assets of CBG, through its ownership of the outstanding shares of RAAD, included the very content library,

---

[6] "The Court accepts the validity of the arguments made by the JOLS on this aspect of the case, but it would be perhaps somewhat undesirable if ultimately such an acceptance were to be technically determinative of this entire Appeal.  In practice, however it will not prove necessary for this Court to resolve the entire case on such an arcane basis."  Cayman Judgment, ¶ 234-235.

B O I E S   S C H I L L E R   F L E X N E R   L L P

license agreements, and physical equipment that lie at the heart of the Complaint's allegations.

Furthermore, the parties to the Pledge Agreement specifically contemplated a situation where additional steps would need to be taken by CBG in order to perfect and protect the security interest created by the agreement. CBG agreed "that at any time and from time to time, at the expense of the Pledgor, the Pledgor will execute and deliver all further instruments and documents, obtain such agreements from third parties, and take all further action, that may be necessary or desirable in order to perfect and protect any security interest granted hereby…" Pledge Agreement ¶ 6(b). The existence of this contractual obligation is relevant for two reasons.

First, even assuming that RAAD rather than CBG did own the relevant content library, license agreements, and physical equipment when the Pledge Agreement was entered, CBG was obligated to obtain from RAAD the necessary instruments and documents to perfect Bobulinski's security interest in those very assets.[7] Second, after the sale of CBG's assets, including all the shares in RAAD, to Remark, CBG was obligated to obtain similar agreements from Remark in order to preserve Bobulinski's security. Indeed, Bobulinski's Note and Pledge Agreement were fully disclosed to Remark in the Purchase Agreement. Remark knew and agreed at the time that it was acquiring those asserts subject to the existing liens. *See supra* Section II.B.

In other words, Bobulinski has a set of contractual remedies at his disposal that can remedy any alleged deprivation. Bobulinski's complaint could only legitimately be that CBG failed to take steps it was contractually obligated to take, <u>not</u> that Roseman misrepresented anything. But that is not what the Complaint alleges. The availability of these contractual remedies, which CBG and Bobulinski

---

[7] The fact that CBG may have failed to carry out a contractual obligation at best poses a potential breach of contract claim against CBG, not a fraud claim against CBG's former CEO (as asserted here).

DEFENDANT ADAM ROSEMAN'S MOTION TO DISMISS

BOIES SCHILLER FLEXNER LLP

negotiated prior to entering into the Note and Pledge Agreement, makes it simply implausible that Bobulinski was defrauded by Roseman out of anything. *See, e.g., Lyon v. FUNimation Productions Ltd.*, 2013 WL 12122229, at *7 (C.D. Cal. Nov. 5, 2013) (Fitzgerald, J.) (holding that contractual terms requiring plaintiff Lyon to assign rights to defendant Bullet LLC "render it unlikely that Lyon was harmed by any alleged fraud inducing him to assign his rights to the Bullet LLC"); *Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615, 620 (N.D. Cal. 2002) (noting that, in a promissory fraud action, "a plaintiff must point to facts which show that defendant harbored an intention not to be bound by terms of the contract at formation"). Moreover, these contractual remedies are still available to Bobulinski and give him the means to compel Remark to honor the pledge.

### 3.  The Complaint Fails to Allege Resulting Damages.

The Complaint fails to allege resulting damages. An alleged misrepresentation "does not support a cause of action unless the plaintiff suffered consequential damages." *Beckwith v. Dahl*, 205 Cal.App.4th 1039, 1064 (2012). Damages "must be pled specifically; general and conclusory allegations do not suffice." *Lazar v. Superior Court*, 12 Cal.4th 631, 645 (1996). If the damages alleged are "'too remote, speculative, or uncertain,' then the pleading cannot state a claim." *Beckwith*, 205 Cal.App.4th at 1064 (quoting *Small v. Fritz Companies, Inc.*, 30 Cal.4th 167, 202 (2003)).

The Complaint alleges in broad strokes that Roseman "defrauded a long-time business associate, Tony Bobulinski, out of $650,000." Compl. ¶ 1. However, the JOLs have already determined that Bobulinski is owed the very same $650,000 dollars from the CBG estate. *Id.* ¶ 36. The Complaint does not identify any other damages to Bobulinski other than boilerplate legal assertions that Bobulinski has been harmed in an amount to be proven at trial. *Id.* ¶¶ 48, 45, 60. To the extent that Bobulinski seeks leave to plead that he will be harmed by any shortfall between his

B O I E S   S C H I L L E R   F L E X N E R   L L P

allowed claim and his actual eventual recovery, leave should be denied because such a claim would be entirely speculative in light of the fact that the CBG liquidation is ongoing. *See Small,* 30 Cal.4th at 202*; Beckwith*, 205 Cal.App.4th at 1064.

### 4. The Complaint Fails to Plausibly Allege a Misrepresentation.

In order to state claim for fraud and negligent misrepresentation, the Complaint must, among other things, allege facts that make it plausible, and not merely possible, that Roseman knew that the content library, license agreements, and physical equipment were owned by RAAD but instead told Bobulinski that they were owned by CBG. *See Ashcroft,* 129 S.Ct. at 1949; *Beckwith*, 205 Cal.App.4th at 1060 ("[I]n a promissory fraud action, to sufficiently allege defendant made a misrepresentation, the complaint must allege (1) the defendant made a representation of intent to perform some future action, i.e., the defendant made a promise, and (2) the defendant did not really have that intent at the time that the promise was made, i.e., the promise was false.") (citing *Lazar*, 12 Cal.4th at 639.) The Complaint fails to meet this hurdle; in fact, the Complaint itself cites testimony from Roseman that shows, on its face, that Roseman intended the pledge to be effective, which is the exact opposite of what the Complaint must allege in order to survive dismissal.

The Complaint relies on Roseman's cross examination by Bobulinski's counsel in the Cayman Proceeding.[8] In testimony quoted in the Complaint, Roseman makes clear that (i) he intended the pledge agreement to create a security interest in Bobulinski's favor; (ii) that the collateral included CBG's content library

---

[8] The Complaint states "Roseman had represented to Bobulinski that those 'license agreements' and 'content library' were owned by CBG, when in fact, they were owned by a different entity. Roseman has admitted this under oath." Compl. ¶ 2. The Complaint does not cite any part of Roseman's testimony for this claim, none of the testimony quoted in the Complaint supports this proposition (*see id.* ¶¶ 39-40), and none of Roseman's other testimony supports this proposition.

and license agreements; and (iii) that Roseman intended the document to be an

effective pledge over these assets:

> **Counsel**: So there is no doubt, is there, that [the Pledge] was intended to
> create a security interest in favor of Mr. Bobulinski.
> **Roseman: No. There is no doubt in my mind.**
> **Counsel:** And the collateral includes specifically the Company's [CBG's]
> content library and license agreements, doesn't it?
> **Roseman**: **That's correct.**
> **Counsel**: And it was intended that this document would be an effective
> pledge over the content library and license agreements; correct?
> **Roseman**: It was indeed.

Compl. ¶ 39; LaSalle Decl. Ex. 5 ("Cayman Tr.") at 38:18-20; 38:25-39:6.  These

allegations are fatal to the fraud and negligent misrepresentation claims.  The

Complaint affirmatively alleges that Roseman intended the very thing that

Bobulinski urges the Court to believe misrepresented: that Roseman in fact believed

and intended that the pledge agreement created a valid security interest in the

collateral.

What's more, in testimony that directly follows the cited passages in

Paragraph 39, Bobulinski's counsel affirmatively procured testimony from Roseman

that CBG itself had a significant content library and license agreements:

> **Counsel**: And you took care to ensure that there were assets, content library
> and license agreement, correct?
> **Roseman: Yeah, we had a significant content library and license
> agreements.  That's correct.**
> **Counsel**: "We," being the Company [CBG]?
> **Roseman**: **"We," being the Company [CBG].  Correct.**
> **Counsel:** And also the subsidiaries of the Company, RAAD in particular, had
> content library and license agreements, didn't they?
> **Roseman**: **Correct.**
> **Counsel**: In the United States?
> **Roseman**: **Correct.  Absolutely.**
> **Counsel**: And the Company's [CBG's] content library and license agreements
> were in the United States; correct?
> **Roseman: Most of them would have been, a significant portion at least.
> Yes.**

BOIES  SCHILLER  FLEXNER  LLP

Cayman Tr. at 40:25-41:15.[9]  In light of this testimony, which is incorporated by reference in the Complaint and immediately follows passages cited by the Complaint, the Complaint fails to plausibly allege that Adam knew or should have known the pledge would have been ineffective.

The Complaint also cites two questions by Bobulinski's attorney where Roseman is asked *to assume* that CBG did not own the content library and license agreements.  Roseman was then asked whether it would be a "misleading statement" to say that (i) the document intended to create a security interest ("I would guess that's the case, yes") and (ii) that CBG had authority to pledge the collateral ("I would believe so, yes").  Compl. ¶ 39.  Aside from the questions themselves being hopelessly vague and misleading, they do not even address the critical question of what Roseman knew at the time; rather, the questions ask Roseman to assume that a statement is not true and then ask whether that same statement is "misleading." These exchanges do not remedy the Complaint's failure to plausibly plead a misrepresentation by Roseman.[10]  *See Gonzalez v. Wells Fargo Bank, N.A.,* 2016 WL 10987345, at *3 (C.D. Cal. Nov. 9, 2016) (Fitzgerald, J.) (dismissing claims for fraud and negligent misrepresentation for failure to aver facts plausibly alleging a misrepresentation).

---

[9] On redirect examination by the JOLs' counsel, Roseman testified that he would have expected that RAAD owned certain of the United States content agreements but that he could not confirm the breakdown of ownership between CBG and RAAD.  This, of course, is a far cry from what the Complaint must allege to survive dismissal: facts that make it plausible that Roseman knew or should have known that CBG did not own any assets that could be described as a content library or license agreement.

[10] The testimony excepted in paragraph 40 about whether CBG took any action to perfect Bobulinski's security interest adds nothing to the fraud and negligent misrepresentation counts, and at best refers to a potential breach of the Pledge Agreement by CBG.

BOIES SCHILLER FLEXNER LLP

### 5. The Complaint Fails to Plausibly Alleged Causation.

Bobulinski must "establish a complete causal relationship between the alleged misrepresentations" made by Roseman "and the harm claimed to have resulted therefrom." *Beckwith*, 205 Cal.App.4th at 1062 (quoting *OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.*, 157 Cal.App.4th 835, 864 (2007)). There are two components to this causal relationship: "First, the plaintiff's actual and justifiable reliance on the defendant's misrepresentation must have caused him to take a detrimental course of action. Second, the detrimental action taken by the plaintiff must have caused his alleged damage." *Id.* With respect to the second component, Plaintiff cannot state a claim "if the damages sustained were otherwise inevitable or due to unrelated causes." *Id.* at 1064. Here, the causal chain between Roseman's alleged misstatements regarding the ownership of the Collateral and the harm that Bobulinski may suffer in the future has been interrupted at least twice.

### i. The Harm, If Any, Was Caused By Alleged Contractual Failures.

The Complaint fails to allege causation because, as described above, CBG had a contractual obligation to secure agreements from third parties (such as RAAD and Remark) to protect Bobulinski's security interest. To the extent that Bobulinski may suffer some harm in the future, such harm would have been caused by CBG's alleged failure to fulfill those contractual obligations, rather than any statement by Roseman regarding which entity owned the content library, license agreements, and physical equipment. At most, Bobulinski may have a breach claim against CBG but steps can be taken to remedy those alleged deficiencies, regardless of whether CBG or RAAD owned the Collateral.

### ii.    The Harm, If Any, Was Caused by Bobulinski's Status as Shareholder, as Determined by the Cayman Judgment.

The Cayman Judgment, incorporated by reference into the Complaint, makes crystal clear that Bobulinski's claims for any amount over his allowed claim of $650,000 failed because of his status as shareholder, and *not* because of which entity owned the collateral. *See* Cayman Judgment ¶ 259. Under Cayman law, a shareholder cannot proceed as a creditor. *Id.* ¶¶ 257, 132-134, 181, 194. The Grand Court found that because there was no waiver and no estoppel that prevented a conversion of the Principal Loan Amount into equity securities of CBG. *Id.* ¶ 259. Therefore, any further claim that Bobulinski could make would be based on a "right attaching only to shares," and was therefore barred because his standing as a shareholder disqualified any claim as a creditor. According to the Grand Court, "the paradoxical nature of Appellant's argument itself renders it entirely hopeless." *Id.* ¶ 260.

Bobulinski is collaterally estopped by the Cayman Judgment from establishing causation in this case. This Court may consider the collateral estoppel effect of the Cayman Judgment under the doctrine of international comity. *See In re Stephanie M.*, 7 Cal.4th 295, 314, (1994), *as modified on denial of reh'g (*May 12, 1994) ("The doctrine of comity prescribes that a court of this nation recognize the judgment of a court of a foreign nation when the foreign court had proper jurisdiction and enforcement does not prejudice the rights of United States citizens or violate domestic public policy"); *see also Robinson v. Brown,* 2014 WL 1779460, at *2 (E.D. Cal. May 5, 2014) ("A defendant may bring a motion to dismiss under Rule 12(b)(6) based on the doctrines of res judicata or collateral estoppel when the defense does not raise any disputed issues of fact"). Collateral estoppel is applicable if three requirements are met: "(1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated [by the

BOIES SCHILLER FLEXNER LLP

party against whom preclusion is asserted] in the prior litigation; and (3) the

determination of the issue in the prior litigation must have been a critical and

necessary part of the judgment in the earlier action." *McQuillion v. Schwarzenegger,*

369 F.3d 1091, 1096 (9th Cir.2004) (alteration in original).  The Cayman Judgment

serves as a final judgment on the merits that the Note matured without an

intervening liquidity event or a financing arrangement, and as such Bobulinski's

interest in CBG was converted from that of a creditor to that of a shareholder.  *See*

Cayman Judgment ¶ 259.  The determination of this issue was the centerpiece of

that judgment, and Bobulinski had the opportunity to fully litigate his

position.  Accordingly, Bobulinski's claim that any damages he sustained were

caused by the loss of secured collateral or that Bobulinski is entitled to a "multiplier

claim" (Compl. ¶ 35) is therefore precluded by the Cayman Judgment.

     The Grand Court also considered whether Bobulinski should be considered a

secured or unsecured creditor of CBG.  After noting that the court "accepts the

validity of the arguments made by the JOLs on this aspect of the case," the Grand

Court then added: "but it would be somewhat undesirable if ultimately such an

acceptance were to be technically determinative of this entire appeal."  Cayman

Judgment ¶ 234.  The Grand Court then stated: "In practice, however it will not

prove necessary for this Court to resolve the entire case on such an arcane basis."

*Id.* ¶ 235.  That is because the Grand Court ultimately found that there was no

waiver of the Maturity Date, and Bobulinksi could not make any further claim

against the estate because of his status as a shareholder (or notional shareholder).

*Id.* ¶¶ 259-261.  In other words, Bobulinski's status as a shareholder disrupted the

chain of causation between the issue of which company (CBG or RAAD)

purportedly owned the collateral and any harm alleged by Bobulinski.  Thus, the

harm – if any – that Bobulinski may suffer is inevitable and not caused by any

alleged misunderstanding regarding the ownership of the collateral.  *See Goehring v.*

BOIES SCHILLER FLEXNER LLP

B O I E S   S C H I L L E R   F L E X N E R   L L P

*Chapman Univ.*, 121 Cal.App.4th 353, 365-66 (2004) (granting summary adjudication dismissing fraud and negligent misrepresentation claims for failure to "show a causal nexus" between reliance on a misrepresentation and damages); *Kruse v. Bank of America*, 202 Cal.App.3d 38, 60-61 (1988) (vacating a jury verdict on a fraud claim because "the damages sustained were otherwise inevitable" and not a direct result of the alleged misrepresentation).

### D. The Breach of Fiduciary Duty Claim Must Be Dismissed.

To plead a breach of fiduciary duty, Plaintiff must establish three elements: "the existence of a fiduciary relationship, breach of [that] fiduciary duty, and damages." *Leslie Fram*, 2018 WL 5903920, at \*5 (citing *Oasis W. Realty, LLC v. Goldman*, 51 Cal.4th 811, 820 (2011)). Bobulinski has failed to plead any of these elements, and his claim for breach of fiduciary duty must be dismissed.

Bobulinski claims that Roseman owed him a fiduciary duty "based on their long-standing professional relationship as business partners." Compl. ¶ 57. Bobulinski and Roseman were not, however, involved in a joint partnership under California law or any other legal relationship that might give rise to a fiduciary duty. *See Leslie Fram*, 2018 WL 5903920, at \*5-6 (dismissing breach of fiduciary duty claim for failure to establish the existence of a joint venture giving rise to a fiduciary duty). Rather, Bobulinski and Roseman were individuals who contracted to engage in arms-length business transactions together on occasion, and California law does not recognize the general existence of a fiduciary duty between contracting parties. *See Hands on Video Relay Servs., Inc. v. Am. Sign Language Servs. Corp.*, 2009 WL 8691614, at \*6 (E.D. Cal. Aug. 12, 2009) (noting that "[i]n cases where California courts have rejected claims for breach of fiduciary duty between contracting parties, they have done so on the ground that no fiduciary duty existed"); *see also City of Hope National Medical Center v. Genentech, Inc.*, 43 Cal.4th 375, 386–392 (2008) (noting that "[e]very contract requires one party to repose an element of trust and

confidence in the other to perform" and "one party's 'ability to exploit a disparity of bargaining power' between the parties does not necessarily create a fiduciary relationship"); *Wolf v. Superior Court*, 107 Cal.App.4th 25, 29–36 (2003) ("Here, the parties do not dispute that the contract itself calls for an accounting. That contractual right, however, does not itself convert an arm's length transaction into a fiduciary relationship").  Furthermore, Roseman signed the Pledge Agreement on behalf of CBG in his capacity as CEO of the company.  Any fiduciary duties Roseman had with respect to that transaction were owed to CBG, not to Plaintiff. Bobulinski has not alleged any basis for concluding that Roseman somehow owed him a fiduciary duty at the same time Roseman indisputably owed a fiduciary duty to CBG with respect to the same subject matter—the negotiation of an arm's length agreement between CBG and Bobulinski.  Nor could he reasonably have understood or believed that Roseman was responsible for looking out for Bobulinski's interests when he was acting as CEO of CBG in negotiating an arms' length contract between CBG and Bobulinski.  *See Berg & Berg Enterprises, LLC v. Boyle*, 178 Cal.App.4th 1020, 1037 (2009) ("It is without dispute that in California, corporate directors owe a fiduciary duty to the corporation and its shareholders and now as set out by statute, must serve 'in good faith, in a manner such director believes to be in the best interests of the corporation and its shareholders.'") (quoting Cal. Corp. Code § 309); *DCH Health Servs. Corp. v. Waite*, 95 Cal.App.4th 829, 832 (2002) ("But a lawyer owes no general duty of confidentiality to nonclients. Neither does a corporate director owe such a duty to anyone but the corporation") (internal citations omitted).

Because Plaintiff has not pled the existence of a fiduciary duty, it follows that he cannot plead the breach of a duty.  Furthermore, for the reasons articulated above, Plaintiff has not adequately pled causation or damages.

Accordingly, Plaintiff's claim for breach of fiduciary duty should be dismissed.

IV.     <u>CONCLUSION</u>

For the foregoing reasons, Roseman respectfully requests that the Court dismiss the Complaint with prejudice.

DATED:  April 24, 2019                    BOIES SCHILLER FLEXNER LLP


By     _____
           */s/* Jeffrey Hammer
           Alan B. Vickery
           John F. LaSalle
           BOIES SCHILLER FLEXNER LLP
           55 Hudson Yards
           New York, NY 10001
           Telephone: (212) 446-2300
           Facsimile: (212) 446-2350
           avickery@bsfllp.com
           jlasalle@bsfllp.com

           Jeffrey Hammer (CA Bar No. 264232)
           BOIES SCHILLER FLEXNER LLP
           725 South Figueroa Street, 31st Floor
           Los Angeles, California 90017-5524
           Telephone: (213) 629-9040
           Facsimile: (213) 629-9022
           jhammer@bsfllp.com

           *Attorneys for Defendant Adam Roseman*

DEFENDANT ADAM ROSEMAN'S MOTION TO DISMISS