Ryan G. Baker (Bar No. 214036)
rbaker@bakermarquart.com
F. Lucas Paule (State Bar No. 313282)
lpaule@bakermarquart.com
BAKER MARQUART LLP
777 S. Figueroa Street, Suite 2850
Los Angeles, California 90017
Telephone: (424) 625-7800
Facsimile: (424) 625-7850

Attorneys for Plaintiff Tony Bobulinski

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY BOBULINSKI, an individual,<br><br>     Plaintiff,<br><br>     v.<br><br>ADAM ROSEMAN, an individual; and DOES 1 through 20,<br><br>     Defendants. | Case No. 2:19-cv-02963-MWF-SSx<br><br>**PLAINTIFF TONY BOBULINSKI'S OPPOSITION TO MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>[Declaration of Ryan G. Baker filed concurrently]<br><br>[Hon. Michael W. Fitzgerald]<br>**Date:** June 3, 2019<br>**Time:** 10:00 a.m.<br>**Courtroom:** 5A |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................1

II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...........................2

      ROSEMAN DEFRAUDS BOBULINSKI TO PROP UP A FAILING BUSINESS ........................2

      ROSEMAN CONFIRMS HIS LIES TO BOBULINSKI DURING CAYMAN ISLANDS
      LIQUIDATION ...............................................................................................4

      BOBULINSKI'S COMPLAINT ..........................................................................5

      ROSEMAN'S MOTION ....................................................................................6

III.  LEGAL STANDARD.....................................................................................6

IV.   ARGUMENT ...............................................................................................7

      A.  Roseman's Failure to Comply with Local Rule 7-3 Warrants Denial of
          the Motion and Sanctions .......................................................................7

      B.  Bobulinski Has Alleged Fraud in the Inducement ................................10

          1.  Bobulinski was Misled about His Security Interest in the
              Collateral...................................................................................11

          2.  Roseman Misrepresented what CBG Owned When Bobulinski
              Signed the Note.........................................................................14

          3.  Bobulinski Has Alleged Significant Damages .........................16

          4.  The Complaint Properly Alleges Misrepresentations by
              Roseman ...................................................................................18

          5.  The Complaint Plausibly Alleges Causation............................18

      C.  Bobulinski Has Alleged Negligent Misrepresentation...........................20

      D.  Roseman Owed Bobulinski a Fiduciary Duty, Which Roseman
          Breached ..............................................................................................23

      E.  Leave to Amend Is Favored Over Dismissal.........................................25

V.    CONCLUSION.............................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3A Entertainment Ltd. v. Constant Entertainment, Inc.*,
  No. C 08-01274 JW, 2009 WL 248261 (N.D. Ca. Jan 30, 2009) ................................. 18

*Alcatel-Lucent USA, Inc. v. Dugdale Communications, Inc.*,
  No. CV 09-2140PSGJCX, 2009 WL 3346784 (C.D. Cal., Oct. 13, 2009) .................... 9

*Allen v. McCurry*,
  449 U.S. 90 (1980) ............................................................................................ 20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................................. 6

*Barbara A. v. John G.*,
  145 Cal. App. 3d 369 (1983) ............................................................................... 23

*Bell Atlantic Corp. v. Twombly*,
  127 S. Ct. 1955 (2007) .......................................................................................... 6

*Bolander v. Thompson*,
  57 Cal. App. 2d 444 (1943) ................................................................................. 23

*Broam v. Bogan*,
  320 F.3d 1023 (9th Cir. 2003) ......................................................................... 6, 25

*Buckley v. Align Technology, Inc.*,
  No. 5:13-CV-02812-EJD, 2014 WL 3778921 (N.D. Cal., July 31, 2014) ................... 16

*Carpenter Foundation v. Oakes*,
  26 Cal. App. 3d 784 (1972) ................................................................................. 24

*Channell Commercial Corp. v. Wilmington Machinery, Inc.*,
  No. EDCV142240DMGDTBX, 2016 WL 7638181 (C.D. Cal., Mar. 25,
  2016) ................................................................................................................. 10

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  68 Cal. App. 4th 445 (1998) ................................................................................ 23

*Daniel v. County of Santa Barbara*,
  288 F.3d 375 (9th Cir. 2002) ........................................................................... 7, 18

*DTS, Inc. v. Nero AG,*
    No. CV1409791RGKPJWX, 2015 WL 12829611 (C.D. Cal., Oct. 21,
    2015) ........................................................................................................ 10, 18

*Eclectic Properties E., LLC v. Marcus & Millichap Co.,*
    751 F.3d 990 (9th Cir. 2014) .......................................................................... 7

*Gilligan v. Jamco Development Corp.,*
    108 F.3d 246 (9th Cir. 1997) ........................................................................... 2

*Global Acquisitions Network v. Bank of America Corp.,*
    No. CV 12-08758 DDP CWX, 2013 WL 2468386 (C.D. Cal., June 7,
    2013) .............................................................................................................. 10

*Kearns v. Ford Motor Co.,*
    567 F.3d 1120 (9th Cir. 2009) ........................................................................ 7

*Kent v. First Trust & Savings Bank of Pasadena,*
    101 Cal. App. 2d 361 (1950) ........................................................................ 23

*Kudokas v. Balkus,*
    26 Cal. App. 3d 744 (1972) ..................................................................... 23, 25

*L'Garde, Inc. v. Raytheon Space & Airborne Systems,*
    805 F. Supp. 2d 932 (C.D. Cal. 2011) ......................................................... 17

*Lyon v. FUNimation Products Ltd.,*
    No. CV131322MWFAJWX, 2013 WL 12122229 (C.D. Cal., Nov. 5,
    2013) .............................................................................................................. 16

*Mays v. Wal-Mart Stores, Inc.,*
    No. CV 18-02318-AB (KKX), 2019 WL 1395912 (C.D. Cal., Feb. 20,
    2019) ............................................................................................................ 7, 8

*McColgan v. Mutual of Omaha Insurance Co.,*
    4 F. Supp. 3d 1228 (E.D. Cal. 2014) ........................................................... 11

*McQuillion v. Schwarzenegger,*
    369 F.3d 1091 (9th Cir. 2004) ...................................................................... 20

*Melissa Govea, et al. v. Monrovia Unified School District, et al.,*
    No. CV1703093ABMRWX, 2018 WL 5915643 (C.D. Cal., June 19,
    2018) ............................................................................................................ 7, 8

*Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*,
    692 F.3d 983 (9th Cir. 2012) ...................................................................... 12-13

*Morongo Band of Mission Indians v. Rose*,
    893 F.2d 1074 (9th Cir. 1990) ......................................................................... 7

*Mosavi v. Brown*,
    No. LA15CV04147VAPAFMX, 2018 WL 5911761 (C.D. Cal., Aug. 7,
    2018) ........................................................................................................... 10

*Persson v. Smart Inventions, Inc.*,
    125 Cal. App. 4th 1141 (2005) ..................................................................... 23

*Petersen v. Allstate Indemnity Co.*,
    281 F.R.D. 413 (C.D. Cal. 2012)................................................................... 20

*Rieger v. Rich*,
    163 Cal. App. 2d 651 (1958) ........................................................................ 23

*South v. Wishard*,
    146 Cal. App. 2d 276 (1956) ........................................................................ 24

*Southern California Counseling Center v. Great American Insurance Co.*,
    162 F. Supp. 3d 1045 (C.D. Cal. 2014) ........................................................ 10

*Schreiber Distributing Co. v. Serv-Well Furniture Co.*,
    806 F.2d 1393 (9th Cir. 1986) ........................................................................ 7

*Singer v. Live Nation Worldwide, Inc.*,
    No. SACV 11-0427 DOC, 2012 WL 123146 (C.D. Cal., Jan. 13, 2012) .................. 8, 9

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ........................................................................ 6

*Superbalife International v. Powerpay*,
    No. CV 08-5099, 2008 WL 4559752 (C.D. Cal., Oct. 7, 2008)...................... 9

*Thomas v. Brett Sports & Entertainment, Inc.*,
    No. EDCV1600480ABDTBX, 2016 WL 4472995 (C.D. Cal., Aug. 23,
    2016) ............................................................................................................. 9

*Toscano v. Ameriquest Mortgage Co.*,
    No. CIV-F-07-0957AWIDLB, 2007 WL 3125023 (E.D. Cal., Oct. 24,
    2007) ........................................................................................................... 17

*United States v. Allied Chemical Corp.*,
   587 F. Supp. 1205 (N.D. Cal. 1984) ............................................................ 17

*United States v. Redwood City*,
   640 F.2d 963 (9th Cir. 1981) ...................................................................... 7

*Vape Society Supply Corp. v. Zeiadeh*,
   No. SACV1601971AGDFMX, 2017 WL 2919080 (C.D. Cal., Feb. 6,
   2017) ............................................................................................................ 9

*Ventura v. Colgrove*,
   270 Cal. App. 2d 136 (1969) ...................................................................... 24

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ................................................................. 1, 7

**Other Authorities**

Fed. R. Civ. P. 8(a) ............................................................................................ 6, 16

Fed. R. Civ. P. 9(b) ................................................................................................ 7

Local Rule 7-3 ........................................................................................................ 7

Local Rule 7-4 .................................................................................................... 1, 7

PLAINTIFF TONY BOBULINSKI'S OPPOSITION TO MOTION TO DISMISS

# I.  INTRODUCTION

Adam Roseman ("Roseman") defrauded Plaintiff Tony Bobulinski ("Bobulinski") into a $650,000 investment in Roseman's failing business, China Branding Group ("CBG"). Among other things, Roseman purported to secure that investment with assets CBG never owned. Bobulinski, based on his long personal and professional track record with Roseman, trusted Roseman to provide a fair and accurate description of the deal. Roseman, however, had a different agenda – he wanted money for CBG, and he did not care what he had to say to get it – or whether his dishonesty would ultimately cost him a friendship. It did. Now Roseman understandably wants to avoid liability for his actions. But his procedurally defective motion to dismiss (the "Motion") cannot shield him from the consequences of his lies. The Motion should be denied.

Initially, the Motion fails for procedural reasons. Roseman wholly failed to comply with Local Rule 7-3, which requires the moving party to meet and confer with the non-moving party "at least seven (7) days prior to the filing of the motion."  Failure to do so is a basis for denial of the motion. C.D. Cal. Local Rule 7-4. Here, Roseman did not attempt to meet and confer until the day before filing the Motion. (*See* Declaration of Ryan G. Baker ("Baker Decl.") ¶ 4.) The parties did not meet and confer prior to filing.

The Motion should also be denied because it fails on the merits. Bobulinski has properly alleged the required elements for fraud in the inducement, negligent misrepresentation, and breach of fiduciary duty to sufficiently put Roseman on fair notice of his claims and the basis for each claim, as required by Fed. R. Civ. P. 8(a). Furthermore, Bobulinski's fraud claim has been particularly pleaded in compliance with Federal Rule 9(b). Bobulinski has alleged the exact date, place, content, and method by which Roseman made his fraudulent misrepresentations. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."). For example, the following misrepresentations are alleged:

- Bobulinski's loan would be senior secured by "all [of CBG's] assets (content

licenses, [CBG's] production library and [CBG's] fixed production equipment in [CBG] 10k square foot studio in Culver City);" (Compl. ¶¶ 14, 42);

- Certain specific assets (i.e., a content library, license agreements, and physical assets, such as production equipment) were owned by CBG when, for example, Roseman offered to take Bobulinski to "come see the Culver studio;" (Compl. ¶¶ 16, 42); and

- The content library, license agreements, and physical assets were owned by CBG during a March 25, 2015 sit-down meeting with Bobulinski at the Peninsula Hotel in Beverly Hills; (Compl. ¶¶ 17-19, 42).

Based on these statements, which Bobulinski had no reason to doubt, Bobulinski invested. But for those fraudulent statements, Bobulinski would not have invested in CBG. These allegations are sufficient to establish fraud and negligent misrepresentation. *See Gilligan v. Jamco Development Corp.,* 108 F.3d 246, 249 (9th Cir. 1997). Roseman has since admitted these statements were false. In the CBG Cayman Islands liquidation proceedings (the "Cayman Proceedings"), Roseman testified that the assets he promised Bobulinski CBG controlled were in fact owned by RAAD, another company controlled by Roseman – Roseman admitted that saying otherwise would have been "misleading." (Compl. ¶ 39.) It was indeed misleading, and it cost Bobulinski a significant loss.

Although Roseman offers a number of excuses in the Motion, none of those arguments impairs the essential allegations of the complaint – that CBG did not own the assets which secured Bobulinski's Note even though he would not have agreed to loan CBG $650,000 if he had known the true extent of CBG's assets. Bobulinski respectfully requests that the Court deny Roseman's Motion in its entirety.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### Roseman Defrauds Bobulinski to Prop Up a Failing Business

Roseman is the founder and CEO of CBG. In or around 2015, CBG ran out of money. (Compl. ¶ 17; *see also* Cayman Judgment ¶ 10, 12 (CBG "suffered significant cashflow difficulties from inception as a result of the need to find working capital to fund its growth" and "Mr. Roseman was urgently seeking further funding").) As a result,

Roseman was looking for ways to quickly infuse funding into the company.

On or about March 5, 2015, Roseman reached out to his long-time friend and business associate, Bobulinski, by email seeking a short-term bridge loan for CBG. (Compl. ¶ 13-14.) In that email, Roseman claimed that the loan was to be "a senior secured loan to be paid off in first priority" and "secured by all our assets (content licenses, our production library and our fixed production equipment in our 10k square foot studio in Culver City) and all bridge loan principal and interest secured in first position." (Compl. ¶ 14.) Bobulinski expressed interest in helping his friend, and subsequent communications took place.

During these conversations between Roseman and Bobulinski, Roseman continued to misrepresent what assets CBG owned and consequently what assets would secure Bobulinski's loan. Specifically, Roseman repeatedly lied to Bobulinski about CBG's rights and interests in a content library, license agreements, and physical assets (production equipment) (collectively, the "Purported CBG Assets"). Roseman told Bobulinski that CBG owned these assets; unbeknownst to Bobulinski, CBG did not. (Compl. ¶ 52.)

Roseman falsely acted as if the Purported CBG Assets were owned by CBG when, for example, Roseman offered to take Bobulinski to "come see the Culver studio" in a March 20, 2015 email. (Compl. ¶¶ 16, 42.) Roseman also repeated these same false statements during a March 25, 2015 in-person meeting at the Peninsula Hotel. (Compl. ¶¶ 17-19.) Apparently desperate for funding for his failing company, Roseman informed Bobulinski that Roseman would take a loan on whatever terms Bobulinski asked for or needed to move quickly. (Compl. ¶ 17.) Believing that CBG owned the Purported CBG Assets, Bobulinski required that his loan be senior secured by all of CBG's assets. (Compl. ¶ 18.)

Roseman, as CBG's founder and CEO, knew CBG did not own the Purported CBG Assets. Contrary to Roseman's representations in and around March 2015, RAAD Productions, LLC ("RAAD"), a completely separate entity, owned the rights to the Purported CBG Assets Roseman repeatedly claimed were CBG's. (Compl. ¶ 31.) Of

course, Bobulinski did not learn this until well after he had already agreed to the loan based on Roseman's lies.

Roseman also induced Bobulinski to enter into the Note on the promise that Bobulinski would receive a return of two and a half times (2.5x) on the principal amount of his loan in the event of an anticipated sale of CBG or other liquidity event. (Compl. ¶ 35.) Bobulinski's entitlement to this return was the subject of the Cayman Proceedings, as discussed below. (Compl. ¶ 35.)

On or about April 15, 2015, Bobulinski, relying on Roseman's repeated misrepresentations, signed the Note to loan money to CBG. Bobulinski entered into a Senior Secured Promissory Note (the "Note") and a Pledge Agreement (the "Pledge"), based on Bobulinski's understanding – confirmed by Roseman – that the Note was secured by the Purported CBG Assets. (Compl. ¶¶ 20, 29.) Bobulinski would not have agreed to the Note and the Pledge but for the misrepresentations Roseman made about the Purported CBG Assets. (Compl. ¶¶ 26, 45.)

### Roseman Confirms Lies to Bobulinski at Cayman Proceedings

CBG was ultimately sold to another company, Remark Media Inc. ("Remark"). (Compl. ¶¶ 32-34.) Remark's purchase of CBG constituted a "Liquidity Event" under the Note and therefore, Bobulinski believed CBG was required to pay him the principal of the Note with the promised 2.5x return. (Compl. ¶ 35.) The Joint Official Liquidators ("JOLs") of CBG disputed this and rejected Bobulinski's Proof of Debt. (Compl. ¶ 36.) This dispute was the basis for the Cayman Proceedings. (Compl. ¶ 36.)

It was during the Cayman Proceedings that Bobulinski discovered Roseman had misrepresented CBG's ownership of assets. (Compl. ¶ 37-40.) When Bobulinski argued that he was secured by the Purported CBG Assets, the JOLs fought back arguing:

- "To the extent that any 'content library', 'license agreements' and/or 'production equipment' existed but were not located 'in the United States' as of the date the JOLs took control of CBG, or were assets of a subsidiary or affiliate of CBG rather than of CBG, they are not within the definition of 'Collateral' and under California law the security interest created by the Pledge Agreement does not apply to such 'content library', 'license agreements' and/or 'production

equipment'. Accordingly, a court applying California law would not recognize a security interest in such assets." (Compl. ¶ 37);

- "[T]here is no evidence that the Company had any assets falling within the operative part of the definition of Collateral in the Pledge, i.e., content library, license agreements, and physical assets such as production equipment in the United States….the Company carries on business as an investment company. It was a parent company for the Group. As such, the Company had relatively few assets." (Cayman Judgment ¶ 221.)

In sum, the JOLs argued that CBG never owned the Purported CBG Assets. Rather, they were owned by RAAD. Roseman made this argument as well. (*See*, *e.g.*, Cayman Judgment ¶ 222 ("The JOLs emphasise that Mr. Roseman's evidence on this point was that the United States content was owned by RAAD.").) This argument was accepted by the Cayman Court. (*See* Cayman Judgment ¶¶ 113, 115-116, 168.)

The Cayman court issued a judgment (the "Cayman Judgment"), rejecting Bobulinski's appeal on January 23, 2019. (Cayman Judgment, attached as Exhibit 1 to the Declaration of John LaSalle ("LaSalle Decl.) and Roseman's Request for Judicial Notice.)

### Bobulinski's Complaint

Bobulinski filed his Complaint in Los Angeles County Superior Court on February 21, 2019. The Complaint alleges causes of action for (1) fraud in the inducement; (2) negligent misrepresentation; and (3) breach of fiduciary duty against Roseman.

Bobulinski has alleged that he would not have entered into the Note but for Roseman's misrepresentations about CBG's ownership of the Purported CBG Assets in his emails dated March 5, 2015 and March 20, 2015, as well as during the March 25, 2015 sit-down meeting with Bobulinski. (Compl. ¶ 42.) Roseman's misrepresentations were intended to induce Bobulinski to enter into the Note, given his desperation for funding for CBG. (Compl. ¶¶ 17, 46.) Bobulinski reasonably relied on Roseman's misrepresentations based on their relationship as friends and business associates. (Compl. ¶¶ 13, 47.) At the very least, Roseman should have known that his representations were false given his positions as CEO of CBG and the sole member of RAAD. (Compl. ¶ 51.) Finally, the

Complaint also alleges that a fiduciary relationship was formed between Roseman and Bobulinski by virtue of their long-standing professional relationship as business partners, and that Roseman breached his corresponding duties when he misrepresented the ownership of the Purported CBG Assets. (Compl. ¶¶ 57-58.)

## Roseman's Motion

Following the filing of the Complaint, counsel for both parties spoke by phone on two occasions to discuss the matter – on March, 18, 2019 and April 12, 2019. (Baker Decl. ¶ 3.) Counsel for Roseman did not discuss removal of this case to federal court, nor did he attempt to meet and confer regarding this Motion. (Baker Decl. ¶ 3.) Roseman removed this case to federal district court on April 17, 2019.

On April 23, 2019, Roseman's counsel attempted to meet and confer regarding this motion for the first time. (*See* Baker Decl. ¶ 4; LaSalle Decl. ¶ 3). Bobulinski's counsel was unavailable on such short notice, given several significant commitments on April 23 and April 24, 2019. (*See* Baker Decl. ¶ 5; LaSalle Decl. ¶ 3). Despite not completing the meet and confer requirement, Roseman filed the Motion on April 24, 2019.

## III.  LEGAL STANDARD

"Rule 12(b)(6) motions are viewed with disfavor." *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8(a), a plaintiff must provide a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The purpose of Rule 8(a) is to "give the defendant fair notice of what … the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1964 (2007). In order to survive a motion to dismiss, the complaint need contain "only enough facts to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, the Ninth Circuit has explained that: "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss. . ." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). When considering a motion to dismiss under FRCP 12(b)(6), "[a]ll allegations of material fact are taken as true

and construed in the light most favorable to the nonmoving party." *Daniel v. County of Santa Barbara,* 288 F.3d 375, 380 (9th Cir. 2002).

It is well established that, "[i]f a complaint is dismissed for failure to state a claim, leave to be amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986). The policy favoring amendment be applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir. 1990). And "[d]ismissal without leave to amend is proper only in 'extraordinary cases.'" *Id.*; *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

Fraud claims must be pled with particularity. Fed. R. Civ. P. 9(b). "Rule 9(b) demands that the circumstances constituting the alleged fraud be 'specific enough to give defendants notice of the particular misconduct.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). This means that "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). However, fraudulent intent can be alleged generally. *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 n. 5 (9th Cir. 2014).

## IV.   ARGUMENT

### A.   Roseman's Failure to Comply with Local Rule 7-3 Warrants Denial

Prior to bringing a 12(b)(6) motion, the moving party is required to "contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution." C.D. Cal. Local Rule 7-3. This conference "shall take place at least seven (7) days prior to the filing of the motion." *Id.* Roseman admits he failed to comply with this rule. (*See* LaSalle Decl. ¶ 3). Failure to comply with this requirement is grounds for denial. C.D. Cal. Local Rule 7-4; *see, e.g.*, *Mays v. Wal-Mart Stores, Inc.*, No. CV 18-02318-AB (KKX), 2019 WL 1395912, at *15 n. 15 (C.D. Cal. Feb. 20, 2019); *Melissa Govea, et al. v. Monrovia Unified Sch. Dist., et*

*al.*, No. CV1703093ABMRWX, 2018 WL 5915643, at *1 (C.D. Cal. June 19, 2018); *Singer v. Live Nation Worldwide, Inc.*, No. SACV 11-0427 DOC, 2012 WL 123146, at *2 (C.D. Cal., Jan. 13, 2012).

Roseman's counsel "attempted to meet and confer with counsel for Tony Bobulinski" on April 23, 2019. (*See* LaSalle Decl. ¶ 3.) This was the *first time* Roseman's counsel indicated Roseman would seek dismissal, let alone seek to meet and confer with regard to the Motion, which was undoubtedly near final at the time of that first meet and confer request. (*See* Baker Decl. ¶ 4.) Bobulinski's counsel was unable to discuss Roseman's contemplated motion given several significant commitments on April 23 and April 24, 2019. (*See* Baker Decl. ¶ 5; LaSalle Decl. ¶ 3.)

Undeterred, Roseman filed the Motion on April 24, 2019. Roseman's counsel attempts to shift blame to Bobulinski. (*See* LaSalle Decl. ¶ 3 ("I offered to stipulate to extend the deadline for Roseman to respond to the Complaint by seven days from the date that Bobulinski's counsel would be available to meet and confer. Counsel for Bobulinski did not respond to this offer and did not propose another time to meet and confer.").) But Bobulinski, having filed his complaint two months earlier, was not interested in further delay. The Court should not permit Roseman to simply ignore the Local Rules.[1] Roseman offers no valid excuse for his failure to abide by this simple rule.

Failure to comply with Local Rule 7-3 is a sufficient basis for denial of the Motion. *See Mays*, No. CV 18-02318-AB (KKX), 2019 WL 1395912, at *15 n. 15 (moving party's "failure to comply with Local Rule 7-3 is an independent ground on which the Court" denies the motion and noting that "[c]ourts have summarily denied a party's motion for failure to comply with Local Rule 7-3."); *Melissa Govea*, No. CV1703093ABMRWX, 2018 WL 5915643, at *1 (court denied motion because defendants "did not send their

---

[1] Roseman has local counsel, based in Los Angeles. Moreover, his New York counsel, which have been admitted *pro hac vice*, have certified that they are "familiar with the Court's Local Civil and Criminal Rules…" (*See* Application of Non-Resident Attorney [John F. LaSalle and Alan B. Vickery] to Appear in a Special Case *Pro Hac Vice*, p. 2.) And Roseman's firm, Boies Schiller Flexner LLP, is certainly no stranger to this Court.

'meet and confer' letter until…the day before Defendants filed their Motion."); *Singer*, No. SACV 11-0427 DOC, 2012 WL 123146, at *2 (court denied motion holding that "correspondence sent three days before the filing of the motion [did not] constitute[] substantial compliance with Local Rule 7–3"); *Thomas v. Brett Sports & Entm't, Inc.*, No. EDCV1600480ABDTBX, 2016 WL 4472995, at *2 (C.D. Cal., Aug. 23, 2016) (court denied motion to strike because motion was filed "merely five days after the conference apparently took place"); *Vape Soc'y Supply Corp. v. Zeiadeh*, No. SACV1601971AGDFMX, 2017 WL 2919080, at *3 (C.D. Cal. Feb. 6, 2017) (motion to dismiss denied for failure to comply with Local Rule 7-3 and noting that "Local Rule 7-3 isn't just a piece of petty pedantry put down to trip up lawyers. Nor is Local Rule 7-3 a mere formalism simply there to be checked off by lawyers."). A moving party's decision to wait until the last minute to meet and confer is inexcusable. *See Alcatel-Lucent USA, Inc. v. Dugdale Comm'ns, Inc.*, No. CV 09-2140PSGJCX, 2009 WL 3346784, at *4 (C.D. Cal. Oct. 13, 2009) (motion denied where defendant "waited until the last possible moment to challenge a complaint of which it was clearly on notice."). All of this authority supports categorical denial of Roseman's Motion.

     In *Superbalife International v. Powerpay*, No. CV 08-5099, 2008 WL 4559752, at *2 (C.D. Cal. Oct. 7, 2008), defendant's counsel failed to satisfy Local Rule 7-3, but argued that he requested an extension from plaintiff's counsel, thereby evidencing a good faith attempt to meet and confer. There, defendant filed his motion without meeting and conferring because "it appeared that [plaintiff] was not going to simply grant the extension." *Id.* The court denied the motion for failure to comply with Local Rule 7-3.

     Here, counsel for Roseman, realizing the impending deadline to file the Motion, sought a stipulation to extend the time to respond. (LaSalle Decl. ¶ 3.) When counsel for Bobulinski was unable to respond within 24 hours, Roseman proceeded to file the Motion anyway. Of course, Roseman did not seek any extension of time by *ex parte* application or otherwise. Roseman's request that Bobulinski agree to further delay these proceedings does not excuse Roseman's knowing and willful failure to timely meet and confer. (*See*

LaSalle Decl. ¶ 3.)

Roseman's failure to comply with Local Rule 7-3 is fatal to his Motion.[2]

## B. Roseman Defrauded Bobulinski

"A cause of action for [fraud in the inducement] requires the plaintiff to prove (a) a knowingly false misrepresentation by the defendant, (b) made with the intent to deceive or to induce reliance by the plaintiff, (c) justifiable reliance by the plaintiff, and (d) resulting damages." *Glob. Acquisitions Network v. Bank of Am. Corp.*, No. CV 12-08758 DDP CWX, 2013 WL 2468386, at *1 (C.D. Cal., June 7, 2013). "Fraud in the inducement arises when a party is "induce[d] ... to assent to something he otherwise would not have." *S. California Counseling Ctr. v. Great Am. Ins. Co.*, 162 F. Supp. 3d 1045, 1052 (C.D. Cal. 2014). Moreover, Bobulinski's Complaint satisfies the Rule 9 pleading standard. Fed. R. Civ. P. 9(b); *Vess*, 317 F.3d at 1106.

Bobulinski alleges Roseman made several misrepresentations about the assets owned by CBG, which ultimately induced Bobulinski into entering into the Note. (*See*, *e.g.*, Compl. ¶¶ 14, 16-19, 42.) *See DTS, Inc. v. Nero AG*, No. CV1409791RGKPJWX, 2015 WL 12829611, at *4 (C.D. Cal., Oct. 21, 2015) ("Misrepresentation requires communication of misinformation on which the recipient relies."). Specifically, Roseman:

- Falsely misrepresented that Bobulinski's loan would be senior secured by "all [of CBG's] assets (content licenses, our production library and [CBG's] fixed production equipment in [CBG's] 10k square foot studio in Culver City)" in a March 5, 2015 email; (Compl. ¶¶ 14, 42);

---

[2] A court "may also issue sanctions for the failure for a failure to comply with Local Rule 7-3." *Mosavi v. Brown*, No. LA15CV04147VAPAFMX, 2018 WL 5911761, at *3 (C.D. Cal. Aug. 7, 2018); *see also Channell Commercial Corp. v. Wilmington Mach., Inc.*, No. EDCV142240DMGDTBX, 2016 WL 7638181, at *4 (C.D. Cal. Mar. 25, 2016) (court issued sanctions of $500 for failure to comply with Local Rule 7-3). Roseman's blatant failure to satisfy Local Rule 7-3 is sanctionable conduct in addition to ground for denial of the Motion. Had Roseman completed a meet and confer pursuant to the Local Rules, a potential resolution between the parties could have prevented expenditure of the Court and parties' resources.

- Falsely acted as if certain assets (i.e., a content library, license agreements, and physical assets, such as production equipment) were owned by CBG when, for example, Roseman offered to take Bobulinski to "come see the Culver studio" in a March 20, 2015 email; (Compl. ¶¶ 16, 42);

- Misrepresented Purported CBG Assets at a March 25, 2015 meeting with Bobulinski at the Beverly Hills Peninsula Hotel; (Compl. ¶¶ 17-19, 42); and

- Omitted to explain that RAAD actually owned the assets at the time Bobulinski provided the Note. (Compl. ¶¶ 31, 42, 44.)

Roseman's misrepresentations were significant because Bobulinski would not have entered into the Note if he was provided the truth about the Purported CBG Assets. (*See*, *e.g.*, Compl. ¶ 18, 26, 45.) Roseman knew his misrepresentations about what CBG actually owned were false because Roseman was the sole member or manager of RAAD, which actually owned the assets. (Compl. ¶ 30.) Roseman admitted while testifying during the Cayman Proceedings that it was a "misleading statement" to say that CBG "intended to create a security interest in those assets" or that CBG "had full power, authority and rights to pledge" those assets. (Compl. ¶ 39.)

Bobulinski justifiably relied on Roseman's statements. Bobulinski and Roseman were close business associates for over 16 years (Compl. ¶ 13), and Roseman had approached Bobulinski seeking financial assistance on multiple occasions over the course of their professional relationship. (Compl. ¶ 17.) Bobulinski had no reason to believe that Roseman's representations were false. *McColgan v. Mut. of Omaha Ins. Co.*, 4 F. Supp. 3d 1228, 1233 (E.D. Cal. 2014). ("Justifiable reliance in a fraud action is ordinarily a question of fact, '[e]xcept in the rare case where the undisputed facts leave no room for a reasonable difference of opinion.'").

### 1. Bobulinski was Misled about His Security Interest in the Collateral

Bobulinski would not have entered into the Note if he knew that CBG did not actually own the assets that purportedly secured his loan. (*See*, *e.g.*, Compl. ¶ 18, 26, 45.)

Roseman's Motion does not contest the ownership of the relevant assets. Nowhere in the Motion does Roseman state that CBG did, in fact, own those assets, as opposed to RAAD. And this issue of ownership essentially forms the basis of Bobulinski's whole Complaint.

However, Roseman apparently has chosen to double down on his misstatements in his continued attempt to avoid responsibility for duping Bobulinski. Roseman takes the position that "regardless of which entity (CBG or RAAD) owned the collateral," Bobulinski was granted a security interest in the Collateral. (Motion, p. 13). In support of this argument, incredibly, Roseman applies case law cited by Bobulinski in the Cayman Proceedings, arguing that under California law, a parent entity can pledge assets held by an affiliated entity where the pledger is also an officer of the affiliated entity.[3] *Id*.

First, this argument about CBG as a parent entity misses the point made in Bobulinski's Complaint. As Bobulinski alleged, RAAD was *not* an affiliated entity of CBG when Roseman made misrepresentations about CBG's assets. Instead, RAAD was a completely separate entity from CBG. (Compl. ¶¶ 33-34.) RAAD only became a subsidiary of CBG months after Bobulinski had already entered into the loan and only in order to complete the sale of CBG to Remark. *Id*. Even then, CBG did not come to own RAAD's assets – it only owned shares in RAAD. (Compl. ¶ 34.)

Second, in the Cayman Proceedings, Bobulinski argued Roseman "caused [CBG] to pledge those assets [the Collateral], even though they did not belong to [CBG]." (Cayman Judgment ¶ 150.) Consequently, Bobulinski argued that the under the doctrine of estoppel, CBG cannot argue that it did not pledge those assets. (*See* Cayman Judgment ¶ 97.) The Cayman Court rejected that argument (*See* Cayman Judgment ¶¶ 113, 115-116, 168), and the fact that Bobulinski advanced a different theory at some point in a totally different proceeding, between different parties and with different claims, does not prevent him from making arguments before this Court. *See Milton H. Greene Archives, Inc. v. Marilyn*

---

[3] This argument comes from *Wachovia Bank Nat'l Ass'n v. WL Homes, LLC (In re WL Homes LLC)*, 534 Fed App 165 (3d Cir. 2013). (*See* Motion, p.13). Bobulinski and the JOLs disputed the applicability of *WL Homes* during the Cayman Proceedings.

*Monroe LLC*, 692 F.3d 983, 993 (9th Cir. 2012) (judicial estoppel applies where a party prevailed on earlier argument).[4]

Roseman misleadingly states that this action is the first time that Bobulinski argues "that he was somehow deceived into making the $650,000 loan (even though mere months ago Bobulinski urged the Grand Court to reward him with a $1,625,000 claim on the basis of the very loan he now says he was fraudulently induced to enter)." (Motion, p. 1-2, 10). But Bobulinski brings this lawsuit because of what was uncovered during the Cayman Proceedings. It was during the Cayman Proceedings that Bobulinski learned of the falsity of Roseman's statements regarding his security interest (through Mr. Dosker's report, the JOL's arguments, and Roseman's transcript). (*See*, *e.g.*, Compl. ¶¶ 35-40.)

Finally, the fact that Roseman is making this argument at this juncture is incredulous. Interestingly, Roseman is utilizing the same arguments made by Bobulinski during the Cayman Proceedings even though it appears that Roseman previously sided with the JOLs. (*See*, *e.g.*, Cayman Judgment ¶ 222 ("The JOLs emphasise that Mr. Roseman's evidence on this point was that the United States content was owned by RAAD.").) But Roseman cannot have it both ways. If Roseman is now taking the position that the JOLs were wrong, and that the Cayman court's conclusion on this issue was

---

[4] In support of the JOLs, Mr. Dosker stated: "[T]he Pledge Agreement clearly states that what is pledged are assets of CBG – not assets of any subsidiary of CBG. And paragraph 4 of the First Affidavit of Shing Tao, dated September 24, 2018, confirms that as of the closing date of the APA transaction, CBG did not own any license agreements or media content (which Shing Tao thinks are synonymous with the phrases "content library" and "license agreements" used in the Pledge Agreement). Since CBG did not own those, they are not within the scope of the pledge in the Pledge Agreement." (Cayman Judgment ¶ 113; *see also* Compl. ¶¶ 37-38.)

The JOLs also argued that: "[T]here is no evidence that the Company had any assets falling within the operative part of the definition of Collateral in the Pledge, i.e., content library, license agreements, and physical assets such as production equipment in the United States….the Company carries on business as an investment company. It was a parent company for the Group. As such, the Company had relatively few assets….The JOLs emphasise that…the United States content was owned by RAAD." (Cayman Judgment ¶¶ 221-222.)

PLAINTIFF TONY BOBULINSKI'S OPPOSITION TO MOTION TO DISMISS

erroneous, it would seem reckless, or at a minimum negligent, for Roseman to have taken their side or to have stood on the sidelines and allow the Cayman court to find against Bobulinski on this point.

He states that he "ceased his responsibilities as Chief Executive Officer, and the JOLs took over the day to day operations of CBG." (Motion, p. 7). But this statement is misleading because the JOLs were meant to complement CBG's Board of Directors, which Adam sat on.[5]  And the Board of Directors retained authority and power to make decisions. Therefore, Roseman had the opportunity to correct the JOLs' position or at least inform the Cayman court to instruct its reasoning. He, of course, did not, and the Cayman Court accepted the JOL's finding that CBG did not own the Purported CBG Assets.

### 2. Roseman Misrepresented what CBG Owned When Bobulinski Signed the Note

Roseman next tries to argue that Bobulinski could not possibly have been defrauded because the Collateral included "all assets of CBG 'whether now existing or hereafter from time to time arising or acquired.'"[6] (Motion, p. 14). This argument also fails because it mischaracterizes the misrepresentation alleged in the Complaint.

Roseman misrepresented what assets CBG owned at the time he solicited Bobulinski's financial assistance and at the time Bobulinski ultimately entered into the Note. It is on this basis that Bobulinski entered into the Note at all. Bobulinski would not have agreed to the loan but for the understanding that CBG owned the "content library" and "license agreements" at the time he entered into the Note. (*See*, *e.g.*, Compl. ¶ 18, 26, 45). Roseman represented that CBG currently owned those assets (*see* the email dated

---

[5] This was a point of dispute pointed out by the Cayman Court, which found no need to decide that issue. (*See* Cayman Judgment ¶¶ 142-143.)

[6] Again, this is akin to the argument made by Bobulinski in the Cayman Proceedings – i.e., that CBG should be estopped from arguing that it did not pledge the assets which were actually owned by RAAD. If Roseman is now advancing this argument, there was no reason why he could not have made this point clear during the Cayman Proceedings. Although Roseman was not a party to that matter, he certainly had the opportunity to make his position known.

March 5, 2015 (Compl. ¶ 14), the email dated March 20, 2015 (Compl. ¶ 16), and the March 25, 2015 in-person meeting (Compl. ¶¶ 17-19)), and he acted as if CBG and RAAD were one in the same (Compl. ¶ 52). He did not represent that CBG would *later* acquire shares in RAAD (which actually owned those assets). In fact, he could not have foreseen that such a transaction would occur months later because the Remark deal was not on the table at the time.

Roseman's argument dismisses the significance of the alleged misrepresentation. A debtor's misstatements to a creditor about what the debtor actually owns (as opposed to what it could possibly acquire in the future) will undoubtedly affect the creditor's position on the financial risk of providing a loan. The Complaint alleges that Roseman made these misrepresentations intentionally for the exact purpose of inducing Bobulinski into entering into the Note, which he would not have otherwise done. (*See*, *e.g.*, Compl. ¶¶ 18 ("Roseman assured Bobulinski that he would be senior secured by all of CBG's assets through a pledge agreement….Roseman stated that those assets were owned by CBG and that they would secure Bobulinski's loan."), 46 ("Roseman's misrepresentations were made with the intention to induce Bobulinski to enter into the Note and Pledge.").) If Roseman were truthful about what CBG owned at the time he solicited financial assistance, Bobulinski would not have entered into the Note, or at the very least, would have sought alternate terms. If assets securing a loan are not yet owned by the debtor, the creditor would certainly want additional assurances that those assets would be eventually acquired before agreeing to a loan.

Roseman's argument also fails because, as explained above, CBG never acquired the Purported CBG Assets anyway. Those assets were owned by RAAD, and CBG only acquired shares of RAAD months after Bobulinski had already entered into the Note. (Compl. ¶¶ 33-34.) This was argued by the JOLs during the Cayman Proceedings and accepted by the Cayman court. (*See*, *e.g.*, Cayman Judgment ¶ 6.)

Any potential contractual remedies called for in the Note or the Pledge have no bearing on Bobulinski's claims. (Motion, p. 15-16). An alternative cause of action against

CBG for breach of contract does not preclude a separate claim for fraudulent inducement or negligent misrepresentation against Roseman. Bobulinski is permitted to plead as many separate claims as are available to him. *Buckley v. Align Tech., Inc.*, No. 5:13-CV-02812-EJD, 2014 WL 3778921, at *5 (N.D. Cal. July 31, 2014) ("For pleading purposes, plaintiffs 'may state as many separate claims or defenses as it has, regardless of consistency.'"). Roseman has not cited any authority to the contrary

To support his argument, Roseman cites *Lyon v. FUNimation Productions Ltd.*, but the facts of *Lyon* are distinguishable. There, the plaintiff claimed he was fraudulently induced to assign his rights in a film to a separate LLC. The Court found that fraud was unlikely because the plaintiff had assigned his rights pursuant to an agreement, which he entered into, which specifically required him to do so. *Lyon v. FUNimation Prods. Ltd.*, No. CV131322MWFAJWX, 2013 WL 12122229, at *7 (C.D. Cal. Nov. 5, 2013). In other words, the Court essentially asked, how could plaintiff have been defrauded when he specifically agreed to assign his rights?

Here, Bobulinski did not enter into the Note and Pledge believing that he would only be secured by assets acquired later. Roseman solicited his financial assistance by pointing to specific assets, thereby misrepresenting what CBG actually owned at the time Bobulinski entered into the Note and the Pledge. While the Pledge may have indicated that Bobulinski would be further secured by additional assets acquired "from time to time," Roseman misled Bobulinski into thinking that CBG already owned those relevant assets they had discussed during negotiations, and that those assets secured his Note at the time he entered into it.

### 3. Bobulinski Has Alleged Significant Damages

Roseman argues that the Complaint "fails to allege resulting damages." (Motion, p. 16). As Roseman points out, however, Bobulinski has alleged that he "has suffered damages in an amount to be proven at trial" as to each of his causes of action. (Motion, p. 16; Compl. ¶¶ 48, 54, 60.) This is sufficient pursuant to the Federal Rules of Civil Procedure. *See*, *e.g.*, Fed. R. Civ. P. 8(a)(3) (the Complaint must contain "a demand for

the relief sought, which may include relief in the alternative or different types of relief.").

It is unnecessary to state a specific amount, even for a fraud claim under Fed. R. Civ. P. 9(b). *See Toscano v. Ameriquest Mortg. Co.*, No. CIV-F-07-0957AWIDLB, 2007 WL 3125023, at *6 (E.D. Cal. Oct. 24, 2007) ("In federal actions where state law governs fraud claims, the pleading requirements are nonetheless governed by the Federal Rules of Civil Procedure….The Ninth Circuit has 'interpreted Rule 9(b) to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.' …Plaintiff has alleged that he suffered financial damages, fulfilling a critical element of the fraud claim; stating a specific amount is not necessary.") (internal citations omitted); *see also L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, 805 F. Supp. 2d 932, 944 (C.D. Cal. 2011) ("Plaintiff's Complaint pleads with particularity facts indicating Defendant made material misrepresentations as to its intent to contract with Plaintiff a long term definitive subcontract, and that Plaintiff reasonably relied on these misrepresentations to its detriment. Contrary to Defendant's argument, the Court finds Plaintiff need not plead an exact amount of damages in its Complaint."). Roseman offers no relevant federal authority here. (*See* Motion, p. 16-17.)

Bobulinski would not have agreed to enter into the Note to loan CBG $650,000, but for Roseman's misrepresentations. And had Bobulinski not entered into the Note, there would have been no need for the Cayman Proceedings on Bobulinski's proof of debt in the first place.[7] The amounts sought for Bobulinski's injuries directly stem from Roseman's actions. The Complaint has sufficiently put Roseman on notice of the basis for the damages alleged, with the exact amounts subject to discovery. *See United States v. Allied Chem. Corp.*, 587 F. Supp. 1205, 1209 (N.D. Cal. 1984) ("The liberal opportunity for discovery allows defendant to 'disclose more precisely the basis of both claim and

---

[7] Bobulinski estimates that the Cayman Proceedings cost him over $700,000 in legal fees. On top of that, the JOLs are now claiming that Bobulinski must pay their legal fees amounting to $634,393.52. In any event, as stated, the Federal Rules of Civil Procedure do not require pleading exact amounts of damages at the pleadings stage.

PLAINTIFF TONY BOBULINSKI'S OPPOSITION TO MOTION TO DISMISS

defense and to define more narrowly the disputed facts and issues.'").

Roseman also attempts to argue that the "JOLs have already determined that Bobulinski owed the very same $650,000 dollars from the CBG estate." (Motion, p. 16). But as Roseman is aware, CBG is currently in liquidation and the likelihood of Bobulinski recovering the full amount of the original $650,000 that he loaned is low given the multitude of creditor claims CBG is facing. (*See*, *e.g.*, Cayman Judgment ¶ 27.) Therefore, this is not a valid reason to deny Bobulinski's ability to bring this claim. *See 3A Entm't Ltd. v. Constant Entm't, Inc.,* No. C 08-01274 JW, 2009 WL 248261, at *5 (N.D. Cal. Jan. 30, 2009) ("Under California law, a plaintiff may recover for fraud in the inducement in 'the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.'") (citing Cal. Civ. Code § 3333).

### 4. The Complaint Properly Alleges Misrepresentations by Roseman

Bobulinski alleges Roseman lied regarding ownership of the Purported CBG Assets used to secure the Note. (*See*, *e.g.*, Compl. ¶¶ 14, 16-19, 42.) This is sufficient. *See DTS, Inc.*, No. CV1409791RGKPJWX, 2015 WL 12829611, at *4 ("Misrepresentation requires communication of misinformation on which the recipient relies.").

In a misguided attempt to avoid liability for his misrepresentations, Roseman conveniently attempts to play dumb. Although it is undisputed that Roseman was the sole member or manager of RAAD (Compl. ¶ 30) and the CEO of CBG (Compl. ¶ 51), Roseman wants this Court to believe he did not know which entity held the Purported CBG Assets. But Roseman's revisionist history is irrelevant here. The Court need only consider what has been alleged, which clearly establishes that Roseman knew the Purported CBG Assets were not held by CBG, but were RAAD's. (Compl. ¶¶ 30, 51.) For purposes of this Motion, these facts are "taken as true and construed in the light most favorable to the nonmoving party." *Daniel*, 288 F.3d at 380. Roseman's attempt to argue otherwise is of no moment.

### 5. The Complaint Plausibly Alleges Causation

Finally, Roseman argues that Bobulinski has failed to allege a "causal chain

between Roseman's alleged misstatements regarding the ownership of the Collateral and the harm that Bobulinski may suffer in the future." (Motion, p. 20). Roseman argues that any harm Bobulinski may suffer is "inevitable and not caused by any alleged misunderstanding regarding the ownership of the collateral" because of the Cayman court's opinion regarding Bobulinski's status as a shareholder. (Motion, p. 21-22). Roseman points out that the Cayman court did not resolve that matter "on such an arcane basis" – i.e., whether Bobulinski should be considered a secured or unsecured creditor of CBG. (Motion, p. 22).

But as alleged in the Complaint, Bobulinski's harm was not "inevitable" (Motion, p. 22) because Bobulinski would not have entered into the Note *but for* Roseman's misrepresentations about CBG's assets. (*See*, *e.g.*, Compl. ¶ 18, 26, 45.) Therefore, all harm suffered by Bobulinski related to the Note is directly tied to Roseman's initial solicitation for financial assistance and Roseman misleading Bobulinski in the first place.

While the Cayman court may have ultimately relied on multiple grounds for reaching its decision, it still found that Bobulinski was not secured by those assets he believed were owned by CBG. At issue in the Cayman Proceedings was whether Bobulinski was entitled to payment of his proof of debt in the amount of $1,765,000. Therefore, even if the Cayman court concluded that the dispute did not solely hinge on ownership of the assets, that court was dealing with a different issue than the one alleged in Bobulinski's current Complaint. Here, Bobulinski has essentially alleged that he was misled by Roseman into entering into the Note in the first place. Had Bobulinski not been misled into entering into the Note, the Cayman Proceedings would have been unnecessary. Therefore, Bobulinski's harm stems from Roseman's actions and not solely from the findings of the Cayman court.

In any event, the findings of the Cayman court do not necessarily collaterally estop Bobulinski from establishing causation in this case, as Roseman suggests. (*See* Motion, p. 21-22). An essential element of collateral estoppel is that "the issue must have been actually litigated [by the party against whom preclusion is asserted] in the prior litigation."

PLAINTIFF TONY BOBULINSKI'S OPPOSITION TO MOTION TO DISMISS

*McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1096 (9th Cir. 2004). But this element is not met where Bobulinski did not have "a full and fair opportunity" to litigate the merits of the issue. *See Allen v. McCurry*, 449 U.S. 90, 94–95 (1980). The parties did not litigate[8] the claims asserted in this matter – e.g., whether Roseman defrauded Bobulinski by misrepresenting what assets secured the Note. Although the underlying facts of both matters are related, the claims are different. Bobulinski is not attempting to relitigate the Cayman Proceedings, as Roseman appears to be suggesting – this is a straw-man. The Cayman court's opinion did not decide, much less allow Bobulinski to fully litigate, the issues before this Court.

Furthermore, Roseman's argument that the alleged causation harks back to CBG's failure to fulfill its contractual obligations again misconstrues the alleged misrepresentation. (Motion, p. 20.) As explained above, Roseman misrepresented what assets CBG owned at the time he solicited Bobulinski's financial assistance and at the time Bobulinski ultimately entered into the Note. It is on this basis that Bobulinski entered into the Note at all. (*See*, *e.g.*, Compl. ¶ 18, 26, 45.) Roseman did not represent that CBG would *later* acquire shares in RAAD or that Bobulinski was secured by assets that would be acquired "from time to time." Therefore, the causation of Bobulinski's harm pursuant to his fraud in the inducement claim stems from Roseman's misrepresentations.

### C. Bobulinski Has Alleged Negligent Misrepresentation

Negligent misrepresentation claims require a similar showing as a fraud in the inducement claim, but "while negligent misrepresentation shares four elements with fraud, it differs regarding the fifth element: mental state." *Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413, 417 (C.D. Cal. 2012). Because the elements are essentially the same as a fraud claim, Bobulinski has properly alleged a negligent misrepresentation claim for the same reasons stated above. This is especially so because Bobulinski need only allege that

---

[8] Furthermore, it is questionable whether Bobulinski was given a "full and fair opportunity" to litigate the Cayman Proceedings as the Cayman court denied Bobulinski the opportunity to conduct any discovery in that matter.

PLAINTIFF TONY BOBULINSKI'S OPPOSITION TO MOTION TO DISMISS

Roseman "lacked any reasonable ground for believing his statement to be true" as opposed to a fraud claim which requires a showing that the defendant "made an intentionally false statement." *Id.* Here, Roseman's positions with RAAD and CBG are sufficient to show this because they make it plausible that Roseman should have known that RAAD actually owned the Purported CBG Assets.

Roseman attempts to argue that in his transcript of his cross-examination in the Cayman Proceedings, he testifies that "[t]here is no doubt in my mind" that the Pledge was intended to create a security interest in favor of Bobulinski and that the Collateral included CBG's "content library and license agreements." (Motion, p. 17). Roseman argues that this decisively shows that he "in fact believed and intended that the pledge agreement created a valid security interest in the collateral."

This argument fails because, again, Roseman is narrowly interpreting the alleged misrepresentation. Even if Roseman honestly intended that the Pledge created a security interest in favor of Bobulinski, he misrepresented what assets would comprise the collateral. Bobulinski did not just allege that Roseman misrepresented the existence of a security interest. Rather, the Complaint alleges that Roseman was misrepresenting what the exact assets were that secured Bobulinski's loan. And as reiterated above, it mattered to Bobulinski what assets secured his loan. (*See*, *e.g.*, Compl. ¶ 18, 26, 45.)

Roseman also cites additional testimony where he states that CBG's content library and license agreements were in the United States. (Motion, p. 18). Setting aside the fact that Roseman does not distinguish which "content library and license agreements" in the U.S. belonged to RAAD as opposed to CBG, this testimony clearly contradicts his other statements. The Motion attempts to misleadingly isolate certain statements in a vacuum. But, as alleged in the Complaint, the following testimony was elicited, as well:

> "**Counsel**: If [BCG] didn't own content library or licence agreements it was a misleading statement, wasn't it, to say that it intended to create a security interest in those assets.
> **Roseman**: I would guess that's the case, yes.
> …
> **Counsel**: [Section 5(c) of the Pledge is] a representation and a

warranty that [BCG] had full power, authority and rights to pledge the collateral. Do you see that?

**Roseman**: I do.

**Counsel**: And again, if the Company didn't own the content library and the license agreements, that was also misleading, wasn't it.

**Roseman**: I would believe so, yes."

Looking at these statements in the context of the other evidence put forward, Roseman was not providing accurate information regarding the ownership of assets. (*See*, e.g.*,* Compl. ¶ 52.) As explained above, Mr. Dosker's report states the following: "paragraph 4 of the First Affidavit of Shing Tao, dated September 24, 2018, confirms that as of the closing date of the APA transaction, CBG did not own any license agreements or media content…[s]ince CBG did not own those, they are not within the scope of the pledge in the Pledge Agreement." (Cayman Judgment ¶ 113; *see also* Compl. ¶¶ 37-38.) The JOLs also argued that "there is no evidence that [CBG] had any assets falling within the operative part of the definition of Collateral in the Pledge, i.e., content library, license agreements, and physical assets such as production equipment in the United States." (Cayman Judgment ¶¶ 221-222.)

Roseman argues that the questions asked of him required certain assumptions that CBG did not own the content library and license agreements. (Motion, p. 19). But again, Roseman's statements cannot be looked at in a vacuum. The fact that CBG did not own those assets is not an assumption. The JOLs argued that CBG did not own the license agreements or media content so any questions directed to Roseman addressing these points should be considered. And, at minimum, Roseman's role as CEO of CBG and sole member of RAAD should have provided him with this knowledge.

Therefore, Roseman's decision to reverse course one time during his cross-examination does not save him, does not render Bobulinski's claims moot, and does not warrant dismissal of the Complaint. Bobulinski has also properly alleged that Roseman "lacked any reasonable ground for believing [his] statement to be true," as required for a negligent misrepresentation claim. (*See* Compl. ¶ 52.)

### D. Roseman Owed Bobulinski a Fiduciary Duty, Which Roseman Breached

"The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach." *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 483 (1998). Bobulinski has alleged a fiduciary relationship with Roseman.

A fiduciary relationship arises from "confidence reposed on one side and the resulting superiority and influence on the other." *Bolander v. Thompson*, 57 Cal. App. 2d 444, 447 (1943). "The essence of a fiduciary . . . relationship is that the parties do not deal on equal terms, because the person in whom trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert unique influence over the dependent party." *Barbara A. v. John G.*, 145 Cal. App. 3d 369, 383 (1983).

The court in *Persson v. Smart Inventions, Inc.*, 125 Cal. App. 4th 1141, 1160 (2005), explained that both confidential and fiduciary relationships "give rise to a fiduciary duty." *Id*. But while a fiduciary relationship is often a "recognized legal relationship such as guardian and ward, trustee and beneficiary, principal and agent, or attorney and client," a "confidential relationship may be founded on a moral, social, domestic, or merely personal relationship as well as on a legal relationship" such as the one found between Roseman and Bobulinski. *Id*.; *see also Kent v. First Tr. & Sav. Bank of Pasadena*, 101 Cal. App. 2d 361, 370 (1950) ("It is not essential to show a relationship by affinity or consanguinity, or that the business transacted established a particular relationship between the parties, such as attorney and client or principal and agent. If the parties be friends, and the grantor repose confidence in the grantee, especially if in addition there exist an advisory business relationship" a confidential relationship may exist.); *Rieger v. Rich*, 163 Cal. App. 2d 651, 664 (1958) ("friendship, affection and a close relationship" were found to establish that "decedent reposed trust and confidence in the integrity and fidelity of [] appellants" which "are the elements of a confidential or fiduciary relationship, which in law are synonymous."); *Kudokas v. Balkus*, 26 Cal. App. 3d 744, 750 (1972) (fiduciary relationship "is particularly likely to exist when there is a family relationship or one of

PLAINTIFF TONY BOBULINSKI'S OPPOSITION TO MOTION TO DISMISS

friendship").

"Roseman was a fiduciary of Bobulinski based on their long-standing professional relationship as business partners. Bobulinski and Roseman have been business associates for over 16 years." (Compl. ¶ 57; *see also* Compl. ¶ 13.) In fact, Roseman's meeting with Bobulinski and his solicitation of Bobulinski's financial assistance was a typical occurrence. (Compl. ¶ 17.) Due to this long-standing relationship, and Roseman's superior knowledge, Bobulinski placed his trust in Roseman. (Compl. ¶ 57.)

In *South v. Wishard*, plaintiff and defendant were colleagues and friends for many years and enjoyed an "intimate business and social relationship." 146 Cal. App. 2d 276, 281 (1956). They spent time "advising with each other, over and concerning mutual professional and business transactions; they enjoyed an intimate and affectionate regard for each other and there existed between them a strong bond of friendship and trust, as the result of which plaintiff had unlimited confidence in the promises and representations of [defendant]." *Id*. at 283-284. Accordingly, "plaintiff believed implicitly in the integrity and truthfulness of [defendant] and reposed in him great trust and confidence." *Id*. at 281. The Court held that this was sufficient to find a relationship of "confidential and fiduciary character." *Id*. at 284; *see also Carpenter Found. v. Oakes*, 26 Cal. App. 3d 784, 798 (1972) ("[W]e have no difficulty in finding a fiduciary relationship established . . . by virtue of the long, intimate, personal friendship of" the parties); *Ventura v. Colgrove*, 270 Cal. App. 2d 136, 139 (1969) (friendship established a confidential relationship).

The same type of relationship can be found between Bobulinski and Roseman. "Bobulinski trusted Roseman based on their longstanding professional relationship and close personal friendship." (Compl. ¶ 13). "Roseman had asked Bobulinski for financial assistance on multiple occasions over the course of their professional relationship." (Compl. ¶ 17). Roseman took advantage of this relationship of trust when he misleadingly "informed Bobulinski that [he] would take a loan on whatever terms Bobulinski asked for or needed to move quickly" (Compl. ¶ 17) and "assured Bobulinski that he would be senior secured by all of CBG's assets through a pledge agreement" (Compl. ¶ 18).

Roseman's reference to his fiduciary relationship with CBG is separate and apart from the fiduciary relationship with Bobulinski. Roseman argues that Bobulinski could not "reasonably have understood or believed that Roseman was responsible for looking out for Bobulinski's interests when he was acting as CEO of CBG in negotiating an arms' length contract between CBG and Bobulinski." (Motion, p. 24.) But Bobulinski is not alleging that he had a fiduciary relationship with Roseman stemming from Roseman's role as CEO or because Roseman was the other party in the deal. Again, Bobulinski is alleging that the fiduciary relationship between him and Roseman was based on "their longstanding professional relationship and close personal friendship." (Compl. ¶ 13). Therefore, Roseman's fiduciary duty to CBG has no bearing on his duties to Bobulinski.

Because Bobulinski has properly pled the existence of a fiduciary relationship, as well as a breach of Roseman's corresponding fiduciary duties, Roseman's Motion should be denied. Moreover, the "[e]xistence of a confidential or fiduciary relationship depends on the circumstances of each case and is a question of fact for the fact trier." *Kudokas*, 26 Cal. App. 3d at 750. Therefore, dismissal is inappropriate at this premature stage.

### E. Leave to Amend Is Favored Over Dismissal

Leave to amend is liberally granted and "[d]ismissal without leave to amend is proper only in 'extraordinary cases.'" *Broam*, 320 F.3d at 1028; *Rose*, 893 F.2d at 1079. Therefore, in the event that the Court finds any deficiencies in the Complaint, Bobulinski respectfully requests leave to amend.

## V. CONCLUSION

For the foregoing reasons, this Court should deny Roseman's motion to dismiss.

DATED: May 13, 2019          BAKER MARQUART LLP


By: /s/ Ryan G. Baker
Ryan G. Baker
F. Lucas Paule
Attorneys for Plaintiff Tony Bobulinski