UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 19-2963-MWF (SSx) | **Date:** June 26, 2019 |
| **Title:** Tony Bobulinski v. Adam Roseman, et al. | |

**Present:** The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| None Present | None Present |

**Proceedings (In Chambers):** ORDER RE: MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) [13]

Before the Court is Defendant Adam Roseman's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"), filed on April 24, 2019. (Docket No. 13). Plaintiff Tony Bobulinski filed an Opposition on May 13, 2019. (Docket No. 18). Defendant filed a Reply on May 20, 2019. (Docket No. 20).

The Court has read and considered the papers on the Motion and held a hearing on June 10, 2019.

For the reasons discussed below, the Motion is **GRANTED *with leave to amend***. Plaintiff fails to allege with any specificity the nature of his alleged damages.

## I. REQUEST FOR JUDICIAL NOTICE

In conjunction with the Motion, Defendant requests that the Court take judicial notice of a judgment of the Grand Court of the Cayman Islands dated January 23, 2019, in the proceeding entitled *In the Matter of China Branding Group Limited (In Official Liquidation)*, Cause No. FSD 52 of 2016 (RMJ). (*See* Request for Judicial Notice ("RJN") (Docket No. 15)).

Under Rule 12(d) of the Federal Rules of Civil Procedure, if the Court considers matters outside the pleadings in ruling on a motion to dismiss that motion must be converted into one for summary judgment. Fed. R. Civ. P. 12(d). As a general rule, "a

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 19-2963-MWF (SSx) | **Date:** June 26, 2019 |
| **Title:** Tony Bobulinski v. Adam Roseman, et al. | |

district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). An exception to this general rule exists for (1) materials that are attached to or necessarily relied upon in the complaint, and (2) matters of public record. *Id.* at 688-89.

The Court concludes that the requested document is an official public record. Accordingly, the RJN is **GRANTED**.

## II. BACKGROUND

The following facts are based on the Complaint, which the Court assumes are true and construes any inferences arising from those facts in the light most favorable to Plaintiff. *See, e.g.*, *Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 704 (9th Cir. 2016) (restating generally-accepted principle that "[o]rdinarily, when we review a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we accept a plaintiff's allegations as true 'and construe them in the light most favorable' to the plaintiff" (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009)).

Defendant Adam Roseman is the founder and CEO of China Branding Group Limited ("CBG"). (Complaint ("Compl.") ¶ 12 (Docket No. 1-1)). CBG was the parent company of a group of companies operating in China and the United States; the group's primary business was to introduce international live event content, social media content, and non-studio Hollywood and related video content into the Chinese marketplace. (*Id.*).

Plaintiff Tony Bobulinski and Roseman have been business associates for over 16 years. (*Id.* ¶ 13). Bobulinski invested in a number of Roseman's businesses. (*Id.*). Bobulinski therefore trusted Roseman, based on their longstanding professional relationship and close personal friendship. (*Id.*).

On March 5, 2015, Roseman sent an email to Bobulinski intended to provide an update about CBG and to ask for a short-term bridge loan "to allow [CBG] to acquire some additional top licenses that will help increase our value in a sale." (*Id.* ¶ 14). The

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 19-2963-MWF (SSx)          **Date:** June 26, 2019
**Title:**     Tony Bobulinski v. Adam Roseman, et al.

loan was to be a "a senior secured loan to be paid off in first priority." (*Id.*). The email also stated the following: "Senior secured bridge loan, secured by all our assets (content licenses, our production library and our fixed production equipment in our 10k square foot studio in Culver City) and all bridge loan principal and interest secured in first position." (*Id.*). In response, Bobulinski expressed some interest in helping Roseman. (*Id.* ¶ 15). Roseman and Bobulinski then coordinated to meet in person to further discuss CBG and the bridge loan. (*Id.* ¶ 16).

Roseman and Bobulinski had an in-person meeting on March 25, 2015, during which Roseman explained CBG's financial difficulties, including CBG's lack of sources of capital, and discussed CBG's putative assets. (*Id.* ¶ 17). Roseman explained the need for money and asked whether Bobulinski could provide CBG with a loan, and informed Bobulinski that he would take a loan on whatever terms Bobulinski asked for and needed to move quickly. (*Id.*). This meeting was not uncommon, as Roseman had asked Bobulinski for financial assistance many times over the course of their professional relationship. (*Id.*).

Bobulinski informed Roseman that in order for him to provide a loan, he would need the loan to be senior secured by all of CBG's assets. (*Id.* ¶ 18). Roseman assured Bobulinski that the loan would be senior secured by all of CBG's assets through a pledge agreement. (*Id.*). Roseman outlined CBG's putative assets, including certain studio operations and license agreements. (*Id.*). Roseman stated that those assets were owned by CBG and that they would secure Bobulinski's loan. (*Id.*).

Following the meeting on March 25, and based on Roseman's representations, Bobulinski agreed to lend CBG $500,000. (*Id.* ¶ 20). Bobulinski executed a Senior Secured Promissory Note (the "Note") and a Pledge Agreement (the "Pledge Agreement") on April 15, 2015. (*Id.*). Roseman signed the Note and the Pledge Agreement on behalf of CBG. (*Id.* ¶ 21).

In February 2016, CBG needed additional cash to meet its payroll costs. (*Id.* ¶ 28). Roseman again asked Bobulinski for a loan to CBG, and Bobulinski agreed to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 19-2963-MWF (SSx)**                          **Date:  June 26, 2019**
**Title:      Tony Bobulinski v. Adam Roseman, et al.**

provide an additional $150,000 pursuant to a second note, dated February 1, 2016, which provided the same terms as the first Note.  (*Id.*).

RAAD Productions LLC ("RAAD"), another entity controlled by Roseman, owned the license agreements and media content Roseman purported to pledge in the Note and Pledge Agreement.  (*Id.* ¶¶ 30-31).  Those assets were never owned by CBG, although Roseman later transferred certain RAAD ownership interests to CBG to facilitate CBG's sale.  (*Id.* ¶ 31).  Roseman was the sole member or manager of RAAD. (*Id.* ¶ 30).  Furthermore, RAAD had three shareholders including Tapirdo Enterprises, LLC, which is owned by Roseman's wife and a family trust.  (*Id.*).

In the fall of 2015, believing he could facilitate the sale of CBG and realize a return on his investment in CBG, Bobulinski introduced Roseman to Shing Tao, the CEO and Chairman of Remark Media Inc. ("Remark").  (*Id.* ¶ 32).  Remark was interested in purchasing CBG's business and assets.  (*Id.*).  To facilitate the sale of CBG to Remark, Roseman transferred a certain ownership interest in RAAD to CBG, although the "license agreements" and "content library" that Bobulinski believed CBG owned and which purportedly secured his loan were never transferred.  (*Id.* ¶ 33).  Those assets were owned by RAAD, which later became a subsidiary of CBG.  (*Id.* ¶ 34).

Remark's purchase of CBG constituted a "Liquidity Event" under the Note, which required CBG to pay Bobulinski the principal of the Note ($650,000) with a 2.5x return upon the close of the sale to Remark for a total of $1,625,000.  (*Id.* ¶ 35).  However, the Joint Official Liquidators of CBG rejected Bobulinski's Proof of Debt, claiming that Bobulinski was only owed a balance of $650,000.  (*Id.* ¶ 36).  This dispute was the basis for a separate legal proceeding in the Grand Court of the Cayman Islands (the "Cayman Proceedings").  (*Id.*).  It was during the Cayman Proceedings that Bobulinski first discovered that CBG did not actually own the "license agreements" and "content library" that were supposed to secure his Note.  (*Id.* ¶ 37).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 19-2963-MWF (SSx)**                **Date:  June 26, 2019**
**Title:      Tony Bobulinski v. Adam Roseman, et al.**

Based on the above allegations, the Complaint asserts the following claims for relief: (1) fraud in the inducement; (2) negligent misrepresentation; and (3) breach of fiduciary duty.  (*Id.* ¶¶ 41-60).

## III.  LEGAL STANDARD

In ruling on the Motion under Rule 12(b)(6), the Court follows *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their Ninth Circuit progeny.

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  The Court must disregard allegations that are legal conclusions, even when disguised as facts.  *See id*. at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014).  "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" *Eclectic Props.*, 751 F.3d at 995 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

The Court must then determine whether, based on the allegations that remain and all reasonable inferences that may be drawn therefrom, the complaint alleges a plausible claim for relief.  *See Iqbal*, 556 U.S. at 679; *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011).  "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).  Where the facts as pleaded in the complaint indicate that there are two alternative

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-2963-MWF (SSx)                    Date:  June 26, 2019
Title:    Tony Bobulinski v. Adam Roseman, et al.

explanations, only one of which would result in liability, "plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation.  Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible."  *Eclectic Props.*, 751 F.3d at 996-97; *see also Somers*, 729 F.3d at 960.

## IV.  DISCUSSION

### A.  Compliance with the Local Rules

As an initial matter, Plaintiff contends that the Motion should be denied outright because Defendant's counsel did not attempt to meet and confer until the day before the Motion was filed, in violation of Local Rule 7-3.  (Opp. at 7-8).  Defendant explains that "[t]he combination of the seven-day period permitted by Rule 81(c)(2)(C) and the seven day requirement of Rule 7-3 means that Roseman had less than 12 hours to strictly comply with Rule 7-3 on the same day that he removed the case . . . ."  (Reply at 18).

The Court will consider the merits of the Motion, as Plaintiff does not appear to have suffered prejudice as a result of the failure to meet and confer.  *See Reed v. Sandstone Props., L.P.*, No. CV 12-5021 MMM (VBKx), 2013 WL 1344912, at *6 (C.D. Cal. Apr. 2, 2013) (electing to reach the merits because the plaintiff was not prejudiced); *Gonzalez v. Heritage Pac. Fin., LLC*, No. 2:12-CV-01816-ODW, 2012 WL 3263749, at *3 (C.D. Cal. Aug. 8, 2012) (court refused to deny the motion to dismiss solely on the basis of noncompliance with Local Rule 7-3).

Defendant's counsel, however, is warned to scrupulously comply with the Local Rules going forward.

### B.  Defendant's Alleged Misrepresentations

Plaintiff alleges that Defendant made several fraudulent statements that induced Plaintiff to invest $650,000 in CBG.  (Compl. ¶ 2; Opp. at 2).  Namely, Plaintiff alleges

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.  CV 19-2963-MWF (SSx)** | **Date:  June 26, 2019** |
| **Title:     Tony Bobulinski v. Adam Roseman, et al.** | |

that Defendant stated that "certain specific assets (i.e., a content library, license agreements, and physical assets, such as production equipment) were owned by CBG" when in fact these assets were owned by RAAD.  (Opp. at 2).  Plaintiff alleges that he would not have agreed to the Note and the Pledge Agreement but for the misrepresentations Defendant made about the purported CBG assets, which Defendant knew or should have known were false because Defendant was the sole member or manager of RAAD.  (*Id.* at 4, 11).

Defendant argues that Plaintiff's claims for fraud in the inducement and negligent misrepresentation must be dismissed because Plaintiff was granted a security interest in the collateral, regardless of which entity (CBG or RAAD) owned the collateral.  (Mot. at 13; Reply at 2).  Defendant argues that California law permits a parent entity to pledge assets held by an affiliate entity where the pledger is also an officer of the affiliated entity and thereby gives implied consent to pledge its assets.  (Mot. at 13 (citing *Wachovia Bank Nat'l Assoc. v. WL Homes LLC (In re WL Homes LLC)*, 534 F. App'x 165, 170-71 (3d Cir. 2013))).  In Opposition, Plaintiff argues that "RAAD was not an affiliated entity of CBG when Roseman made misrepresentations about CBG's assets."  (Opp. at 12).  Defendant responds that "it is undisputed that RAAD and CBG were jointly managed companies and shared senior management, including Roseman as CEO of CBG and sole manager of RAAD at the time of the Pledge Agreement.  (Reply at 2; *see* Compl. ¶¶ 44, 51).

Furthermore, Defendant argues that the terms of the Pledge Agreement specifically contemplate that the collateral would include assets that CBG would acquire "from time to time," and therefore Defendant did not make any misrepresentations in connection with the Pledge Agreement.  (Mot. at 6, 14).

The Pledge Agreement states in relevant part:

> The Pledgor [CBG] hereby pledges, assigns and grants to the Secured Party [Bobulinski] as primary obligor and not merely as surety, and hereby creates a continuing first priority lien and security interest in favor of the Secured Party in and to all of its rights, benefit and interest in and to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 19-2963-MWF (SSx)**                         **Date:  June 26, 2019**
**Title:       Tony Bobulinski v. Adam Roseman, et al.**

> the following, wherever located, ***whether now existing or hereafter from time to time arising from or acquired*** (collectively, the 'Collateral'): (a) all assets (including intangible assets) of the Pledgor in the United States, including without limitation its content library, license agreements, and physical assets, such as production equipment.

(Declaration of John F. LaSalle, Ex. 3 ¶ 2 (Docket No. 14-3) (emphasis added)).

The Pledge Agreement also has a "Further Assurances" provision that provides in relevant part:

> The Pledgor agrees that at any time and from time to time, at the expense of the Pledgor, the Pledgor will promptly execute and deliver all further instruments and documents, obtain such agreements from third parties, and take all further action, that may be necessary or desirable in order to perfect and protect any security interest granted hereby or to enable the Secured Party to exercise and enforce its rights and remedies hereunder, under the Note, or under any other agreement related to any Collateral.

(*Id.* ¶ 6(b)).

For purposes of the Motion, the parties do not appear to dispute that RAAD owned the assets at issue at the time of the Pledge Agreement.  (*See* Reply at 5 n.3; Opp. at 15).  Indeed, Plaintiff does not appear to dispute that the Pledge Agreement "indicate[s] that Bobulinski would be further secured by additional assets acquired 'from time to time[.]'" (Opp. at 16).  Rather, Plaintiff argues that "Roseman misled Bobulinski into thinking that CBG *already* owned those relevant assets they had discussed during negotiations, and that those assets secured the Note at the time he entered into it." (*Id.* (emphasis added)).  Plaintiff argues that these misrepresentations are material because "misstatements to a creditor about what the debtor actually owns (as opposed to what it could possibly acquire in the future) will undoubtedly affect the creditor's position on the financial risk of providing a loan." (*Id.* at 15).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 19-2963-MWF (SSx) | **Date:** June 26, 2019 |
| **Title:** Tony Bobulinski v. Adam Roseman, et al. | |

But as Defendant highlights, one of the most glaring deficiencies of the Complaint is that Plaintiff fails to allege any damages from the alleged misrepresentations. Indeed, Plaintiff acknowledges that resulting damages is an element of each of his claims. (*See* Opp. at 10, 20, 23). Nonetheless, Plaintiff alleges only in conclusory terms that he is entitled to damages. In his Opposition, Plaintiff explains that "had Bobulinski not entered into the Note, there would have been no need for the Cayman Proceedings on Bobulinski's proof of debt in the first place." (*Id.* at 17). However, the Court agrees with Defendant that the Complaint itself fails to allege any facts indicating what exactly Plaintiff's loss *was*. Although Plaintiff need not allege the exact amount of damages, Plaintiff must allege what detriment he suffered as a result of the alleged misrepresentations. *See Toscano v. Ameriquest Mortg. Co.*, No. CIV-F-07-0957AWIDLB, 2007 WL 3125023, at *6 (E.D. Cal. Oct. 24, 2007) ("Plaintiff has alleged that he suffered financial damages, fulfilling a critical element of the fraud claim; stating a specific amount is not necessary."); *Valdez v. JPMorgan Chase Bank, N.A.*, No. C 13-2450 SC, 2013 WL 4516366, at *2 (N.D. Cal. Aug. 23, 2013) (dismissing plaintiff's fraud-based claims were plaintiff failed to allege, among other things, "what his damages are purported to be, or any other such information that would meet the specificity standard of Rule 9(b)").

Because the Court determines that the Complaint must be dismissed for failure to adequately allege damages, the Court need not address at this time the other bases for dismissal asserted in the Motion.

Accordingly, the Motion is **GRANTED** *with leave to amend*. Plaintiff may file a First Amended Complaint ("FAC"), if any, by no later than **July 10, 2019**. Failure to file a FAC by the deadline will result in dismissal of the action with prejudice. Defendant shall file a response to the FAC, if any, by no later than **July 24, 2019**.

IT IS SO ORDERED.