UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | | |
|---|---|---|
| Case No. | CV 19-2963-MWF (SSx) | Date:  November 25, 2019 |
| Title: | Tony Bobulinski v. Adam Roseman | |

Present: The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings (In Chambers):**   ORDER RE: MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) [26]

Before the Court is Defendant Adam Roseman's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"), filed on July 24, 2019. (Docket No. 26).  Plaintiff Tony Bobulinski filed an Opposition on August 5, 2019. (Docket No. 28).  Defendant filed a Reply on August 12, 2019.  (Docket No. 29).

The Motion was noticed to be heard on August 26, 2019.  The Court read and considered the papers on the Motion and deemed the matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); Local Rule 7-15.  The hearing was therefore **VACATED** and removed from the Court's calendar.

For the reasons discussed below, the Motion is **DENIED** in part and **GRANTED** *with leave to amend* in part as follows:

- The Motion is denied as to Plaintiff's fraud in the inducement and negligent misrepresentation claims because (i) the allegations are not contradictory; (ii) the FAC pleads reasonable reliance; (iii) Plaintiff's security interest in RAAD does not defeat his claim; (iv) the terms of the Pledge Agreement does not bar Plaintiff's claim; (v) the FAC pleads damages; and (vi) the FAC pleads causation.  At bottom, Defendant's arguments boil down to a factual argument that Plaintiff could not have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-2963-MWF (SSx)                      Date:  November 25, 2019
Title:       Tony Bobulinski v. Adam Roseman

really relied on, and therefore have been damaged by, Defendant's alleged false statements for a variety of reasons. Defendant will have the chance to prove this argument through discovery, but it is inappropriate at the motion to dismiss stage.

- The Motion is granted with leave to amend with respect to Plaintiff's request for rescission. Plaintiff does not cite any authority in support of his argument that a claim for rescission can be brought against a non-party to the contract when the party to the contract is not named as a defendant.

- The Motion is granted with leave to amend with respect to Plaintiff's claim for breach of fiduciary duty. Plaintiff does not sufficiently allege that Defendant owed him a fiduciary duty.

I.   BACKGROUND

Following the Court's granting, in part, of Defendant's Motion for Judgment on the Pleadings, Plaintiff filed a First Amended Complaint ("FAC") on July 10, 2019. (Docket Nos. 22, 23).

The following facts are based on the FAC, which the Court assumes are true and construes any inferences arising from those facts in the light most favorable to Plaintiff. *See, e.g.*, *Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 704 (9th Cir. 2016) (restating generally-accepted principle that "[o]rdinarily, when we review a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we accept a plaintiff's allegations as true 'and construe them in the light most favorable' to the plaintiff" (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009)).

Defendant Adam Roseman is the founder and CEO of China Branding Group Limited ("CBG"). (FAC ¶ 19). CBG was the parent company of a group of companies operating in China and the United States, with the primary business of this group of companies being to provide international live event content, social media content, and non-studio Hollywood and related video content into the Chinese marketplace. (*Id.*).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 19-2963-MWF (SSx) | Date:  November 25, 2019 |
| Title:      Tony Bobulinski v. Adam Roseman | |

Plaintiff Tony Bobulinski and Roseman have been business associates for over 16 years.  (*Id.* ¶ 20).  Bobulinski invested in a number of Roseman's businesses.  (*Id.*).  Accordingly, Bobulinski trusted Roseman based on their longstanding professional relationship and close personal friendship.  (*Id.*).

On March 5, 2015, Roseman sent an email to Bobulinski intended to provide an update about CBG and to ask for a short-term bridge loan "to allow [CBG] to acquire some additional top licenses that will help increase our value in a sale."  (*Id.* ¶ 22).  The loan was to be a "a senior secured loan to be paid off in first priority."  (*Id.*).  The email also stated the following: "Senior secured bridge loan, secured by all our assets (content licenses, our production library and our fixed production equipment in our 10k square foot studio in Culver City) and all bridge loan principal and interest secured in first position."  (*Id.*).  In response, Bobulinski expressed some interest in helping Roseman.  (*Id.* ¶ 23).  Roseman and Bobulinski then coordinated to meet in person to further discuss CBG and the bridge loan.  (*Id.* ¶ 24).

Roseman and Bobulinski had an in-person meeting on March 25, 2015, during which Roseman explained CBG's financial difficulties, including CBG's lack of sources of capital, and discussed CBG's purported assets.  (*Id.* ¶ 25).  Roseman explained the need for money and asked whether Bobulinski could provide CBG with a loan, and informed Bobulinski that he would take a loan on whatever terms Bobulinski asked for and needed to move quickly.  (*Id.*).  This meeting was not uncommon, as Roseman had asked Bobulinski for financial assistance on multiple occasions over the course of their professional relationship.  (*Id.*).

Bobulinski informed Roseman that in order for him to provide a loan, he would need the loan to be senior secured by all of CBG's assets.  (*Id.* ¶ 26).  Roseman assured Bobulinski that he would be senior secured by all of CBG's assets through a pledge agreement.  (*Id.*).  Roseman outlined CBG's purported assets, including certain studio operations and license agreements.  (*Id.*).  Roseman stated that those assets were owned by CBG and that they would secure Bobulinski's loan.  (*Id.*).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.   CV 19-2963-MWF (SSx) | Date:  November 25, 2019 |
| Title:        Tony Bobulinski v. Adam Roseman | |

Roseman also assured Bobulinski that if CBG failed, Bobulinski would be protected because his note would be senior in order of funding.  (*Id.* ¶ 27).  Desperate for funding and wanting to move quickly, Roseman assured Bobulinski that their understanding would be properly documented by the law firm Sheppard Mullin, counsel for CBG.  (*Id.*).  In fact, Roseman recommended against Bobulinski retaining separate counsel, as Roseman felt it would slow down the process of obtaining Bobulinski's loan.  (*Id.*).  Because Bobulinski trusted his longtime friend and business partner, and because Roseman expressed an urgency in obtaining the loan, Bobulinski did not secure his own separate counsel to negotiate or review the terms of the purported security interest in CBG's assets.  (*Id.*).

Following the meeting on March 25, and based on Roseman's representations, Bobulinski agreed to lend CBG $500,000.  (*Id.* ¶ 28).  Over the next few weeks after the meeting, Roseman and Bobulinski negotiated the terms of the loan.  (*Id.*).  Roseman assured Bobulinski that his security interest would encompass all of CBG's assets in the United States.  (*Id.*).

Bobulinski executed a Senior Secured Promissory Note (the "Note") and a Pledge Agreement (the "Pledge Agreement") on April 15, 2015.  (*Id.* ¶ 29).  Roseman signed the Note and the Pledge Agreement on behalf of CBG.  (*Id.*).  Bobulinski would not have agreed to enter into the Note, or at the very least, would have sought alternate terms if he knew that CBG did not actually own the Collateral and if he had full knowledge of what assets CBG owned at the time he entered into the agreements.  (*Id.*).  Bobulinski relied on Roseman's statement that Sheppard Mullin would document their understanding and the agreements and did not retain his own counsel before executing the Note or the Pledge Agreement.  (*Id.*).

Section 4 of the Note states: "[CBG's] performance of its obligations hereunder is secured by a first priority security interest in the collateral specified in the Pledge Agreement."  (*Id.* ¶ 30).  Pursuant to Section 2(a) of the Pledge Agreement, the collateral was defined as "all assets (including intangible assets) of [CBG] in the United States, including without limitation its content library, license agreements, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 19-2963-MWF (SSx) | Date:  November 25, 2019 |
| Title:     Tony Bobulinski v. Adam Roseman | |

physical assets, such as production equipment" (the "Collateral"). (*Id*.). As Roseman later admitted, CBG never owned those assets. (*Id*.).

Section 5(a) of the Pledge Agreement states: "[CBG] represents and warrants as follows… At the time the Collateral becomes subject to the lien and security interest created by this Agreement, [CBG] will be the sole, direct, legal and beneficial owner thereof, free and clear of any lien, security interest, encumbrance, claim, option or right of others except for the security interest created by this Agreement." (*Id*. ¶ 32). Other sections of the Pledge Agreement contain similar representations and warranties regarding CBG's ownership of the collateral. (*Id*. ¶¶ 33-35). Bobulinski would not have agreed to enter into the loan transaction documented in the Note and the Pledge Agreement but for his understanding of the assets comprising the Collateral at the time he entered into the agreements. (*Id*. ¶ 36).

In February 2016, CBG needed additional cash to meet its payroll costs. (*Id*. ¶ 38). Roseman again asked Bobulinski for a loan to CBG, and Bobulinski agreed to provide an additional $150,000 pursuant to a second note, dated February 1, 2016, which provided the same terms as the first Note. (*Id*.).

RAAD Productions LLC ("RAAD"), another entity controlled by Roseman, owned the license agreements and media content Roseman purported to pledge in the Note and Pledge Agreement. (*Id*. ¶¶ 40-41). Those assets were never owned by CBG, although Roseman later transferred certain RAAD ownership interests to CBG to facilitate CBG's sale. (*Id*. ¶ 41). Roseman was the sole member or manager of RAAD. (*Id*. ¶ 40). Furthermore, RAAD had three shareholders including Tapirdo Enterprises, LLC, which is owned by Roseman's wife and a family trust. (*Id*.).

Bobulinski was not aware of the existence of RAAD or its ownership of the Collateral that purportedly secured his Note until long after Bobulinski entered into the Note and Pledge Agreement. (*Id*. ¶ 42). Had Roseman made Bobulinski aware that the Collateral was owned by RAAD and not CBG, Bobulinski would not have entered into the Note. (*Id*.). At all times during Roseman's solicitation of Bobulinski and during

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-2963-MWF (SSx)                    Date:  November 25, 2019
Title:     Tony Bobulinski v. Adam Roseman

the negotiation of the Note and Pledge Agreement, Roseman never mentioned RAAD and acted as if the Collateral was owned by one company, CBG.  (*Id.*).

In the fall of 2015, believing he could facilitate the sale of CBG and realize a return on his investment in CBG, Bobulinski introduced Roseman to Shing Tao, the CEO and Chairman of Remark Media Inc. ("Remark").  (*Id.* ¶¶ 44-45).  Remark was interested in purchasing CBG's business and assets.  (*Id.*).  To facilitate the sale of CBG to Remark, Roseman transferred a certain ownership interest in RAAD to CBG, although the "license agreements" and "content library" that Bobulinski believed CBG owned and which purportedly secured his loan were never transferred.  (*Id.* ¶ 48).  Those assets were owned by RAAD, which later became a subsidiary of CBG for one day.  (*Id.* ¶ 49).

Remark's purchase of CBG constituted a "Liquidity Event" under the Note, which required CBG to pay Bobulinski the principal of the Note ($650,000) with a 2.5x return upon the close of the sale to Remark for a total of $1,625,000.  (*Id.* ¶ 50).  However, the Joint Official Liquidators ("JOLs") of CBG rejected Bobulinski's Proof of Debt, claiming that Bobulinski was only owed a balance of $650,000.  (*Id.* ¶ 51).  This dispute was the basis for a separate legal proceeding in the Grand Court of the Cayman Islands (the "Cayman Litigation").  (*Id.*).  It was during the Cayman Litigation that Bobulinski first discovered that CBG did not actually own the "license agreements" and "content library," which were supposed to secure his Note.  (*Id.* ¶ 52).

During the Cayman Litigation, Roseman later admitted while testifying that CBG did not own the Collateral when he signed the Note and Pledge on behalf of CBG.  (*Id.* ¶ 55).  During these proceedings, Roseman also admitted that CBG did not act to perfect the security interest granted by the Pledge to enable Bobulinski to exercise his rights and remedies under the Pledge.  (*Id.* ¶ 56).  Ultimately, the Cayman Court accepted the JOLs' argument that CBG never owned the Collateral and therefore Bobulinski never had a security interest in the Collateral.  (*Id.* ¶ 59).  The Cayman Court issued a judgment (the "Cayman Judgment"), rejecting Bobulinski's appeal on January 23, 2019, which agreed with the arguments made by the JOLs.  (*Id.*).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 19-2963-MWF (SSx) | Date:  November 25, 2019 |
| Title:     Tony Bobulinski v. Adam Roseman | |

Bobulinski had originally earmarked the money he used for the $650,000 Note to fund another company the ("Investment Company").  (*Id.* ¶ 61).  Bobulinski was part of an investment group (the "Purchasing Group") who planned to buy the Investment Company in 2017.  (*Id.*).  Bobulinski had earmarked $2.5 million as his share of the Purchasing Group's investment, which was then reduced by the money he used to fund the Note for CBG, which Bobulinski entered into because of Roseman's misrepresentations.  (*Id.*).  Because he believed he was receiving a 2.5x return on his $650,000 Note, he also intended for his 2.5x return to be put into Investment Company to increase his investment share.  (*Id.*).

The Purchasing Group ultimately bought the Investment Company in 2017.  (*Id.* ¶ 62).  Following the Cayman Litigation, Bobulinski has been unable to recoup the $650,000 principle amount on his Note or collect the 2.5x return.  (*Id.*).  Furthermore, he has spent additional money out of his own pocket in legal fees during the Cayman Litigation.  (*Id.*).  These amounts were all supposed to be included in Bobulinski's total investment in the Investment Company, originally at the amount of $2.5 million, which was specifically carved out and allocated to him as his share of Purchasing Group's total investment.  (*Id.*).  When Bobulinski could not recoup the amounts he was owed from CBG, Purchasing Group was forced to reallocate part of his share to other individuals.  (*Id.*).

Since 2017, the Investment Company has continued to rise in value.  (*Id.* ¶ 63).  Because Bobulinski was forced to reduce his original intended investment, Bobulinski lost out on the opportunity to obtain a much more valuable share of Purchasing Group's investment.  (*Id.*).

Based on the above allegations, the Complaint asserts the following claims for relief: (1) fraud in the inducement; (2) negligent misrepresentation; and (3) breach of fiduciary duty.  (*Id.* ¶¶ 64-96).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 19-2963-MWF (SSx) | Date:  November 25, 2019 |
| Title:     Tony Bobulinski v. Adam Roseman | |

## II.  LEGAL STANDARD

In ruling on the Motion under Rule 12(b)(6), the Court follows *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their Ninth Circuit progeny.

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Court must disregard allegations that are legal conclusions, even when disguised as facts. *See id*. at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014). "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" *Eclectic Props.*, 751 F.3d at 995 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

The Court must then determine whether, based on the allegations that remain and all reasonable inferences that may be drawn therefrom, the complaint alleges a plausible claim for relief. *See Iqbal*, 556 U.S. at 679; *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011). "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). Where the facts as pleaded in the complaint indicate that there are two alternative explanations, only one of which would result in liability, "plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 19-2963-MWF (SSx) | Date:  November 25, 2019 |
| Title:      Tony Bobulinski v. Adam Roseman | |

render plaintiffs' allegations plausible." *Eclectic Props.*, 751 F.3d at 996-97; *see also Somers*, 729 F.3d at 960.

Fraud-based claims are governed by Rule 9(b). "Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge[.]" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal citations omitted). Under Rule 9(b), fraud allegations must include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citing *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106. Such averments must be specific enough to "give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* (quoting *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

## IV.     DISCUSSION

### A.     Plaintiff's Fraud in the Inducement and Negligent Misrepresentation Claims are Sufficiently Pled

Defendant first argues that Plaintiff's fraud in the inducement and negligent misrepresentation claims must be dismissed for six reasons. The Court determines that each argument fails.

#### 1.     The "Core" Allegations are Not Contradicted by the FAC

Defendant first argues that the "crux" of Plaintiff's fraud and misrepresentation claims, that CBG did not in fact have the assets that fit the description of the Collateral, are "contracted by the FAC and documents it relies on." (Motion at 10-11). Specifically, Defendant points to Roseman's testimony that CBG held licensing agreements for a content library and "several major media events in the United States"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 19-2963-MWF (SSx) | Date:  November 25, 2019 |
| Title:      Tony Bobulinski v. Adam Roseman | |

to argue that "the allegation that CBG owned no assets at the time of the Note that fell within the definition of Collateral is explicitly contradicted by the FAC and the documents that it necessarily relies on." (*Id*. at 11-12).  Defendant also argues that the allegation that Roseman admitted that the Collateral was owned by RAAD and not CBG is contradicted by the testimony attached to the FAC.  (*Id*. at 12-13).  Finally, Defendant argues that the FAC is incorrect to allege that the Cayman Court "held" that there was no evidence that CBG owned assets within the definition of the Collateral.  (*Id*. at 13-14).

In Opposition, Plaintiff argues that as a preliminary matter it is improper for Defendant to repeatedly "argue the factual record." (Opposition at 8).  Next, Plaintiff argues that Defendant again fails to distinguish between assets which "belonged to RAAD as opposed to CBG." (*Id*.).  Plaintiff further points to testimony from Roseman which provided that his statement would have been misleading if "CBG didn't own content library or license agreements," which was the evidence "put forth by the JOLs." (*Id*. at 8-9).  Plaintiff also points to a report put forth by the JOL's expert which provided that "as of the closing date of the APA transaction, CBG did not own any license agreements or media content." (*Id*. at 9).

The Court agrees with Plaintiff.  While Defendant has many factually-based arguments as to why the "core" allegations in the FAC relating to Plaintiff's fraud and misrepresentation claims are contradictory, many of these arguments are factually based and improper arguments to make at the motion to dismiss stage.  Either CBG owned the assets, or it did not; the FAC alleges that CBG did not, despite Defendant's statements to the contrary.  Defendant can take discovery and prevail on summary judgment if it turns out this argument is factually incorrect.  Accordingly, construing all inferences in Plaintiff's favor at this stage, as the Court must, the Court cannot determine that the allegations highlighted by Defendant are sufficiently contradictory to merit granting the Motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.   CV 19-2963-MWF (SSx) | Date:  November 25, 2019 |
| Title:       Tony Bobulinski v. Adam Roseman | |

### 2. The FAC Pleads Reasonable Reliance

Defendant next argues that the FAC fails because Plaintiff fails to plead reasonable reliance.  (Motion at 14-16).  Defendant argues that this is an objective standard, and that a court can consider "the plaintiff's experience and intelligence, as well as the business environment.  (*Id*. at 14) (citing *IV Solutions, Inc. v. United HealthCare Servs.*, No. CV-16-9598-MWF(AGRx), 2017 WL 3018079, at *7 (C.D. Cal. July 12, 2017)).  Defendant argues that Plaintiff is a "sophisticated investor" who "knows how to protect his interests." (*Id*.).  Additionally, Defendant notes that the FAC does not allege that Plaintiff conducted any due diligence, that Plaintiff retained counsel, or that he asked probing questions about the loan.  (*Id*. at 15).  Finally, Defendant argues that the structure of the loan (that it would be offered to other shareholders and that it was convertible) suggest that Plaintiff's allegation that he relied on the Collateral for protection was "implausible."  (*Id*. at 15-16).

In Opposition, Plaintiff argues that he was "justified in relying on Roseman's representations because Roseman was the CEO and founder of CBG and they had been business partners and close friends for over 16 years."  (Opposition at 12) (citing FAC ¶ 25).  Regarding Defendant's argument about counsel, Plaintiff notes that he relied on Plaintiff's representations that CBG's counsel would be present and that Defendant "recommended against [Plaintiff] retaining separate counsel, as [Defendant] felt it would slow down the loan process."  (*Id*.) (citing FAC ¶ 27).  Plaintiff also argues that justifiable reliance is "ordinarily a question of fact."  (*Id*.).  Finally, Plaintiff argues that Defendant's characterizations of Plaintiff's investment knowledge are outside the FAC, and regardless there is no case law supporting Defendant's arguments.  (*Id*. at 12-14).

The Court agrees with Plaintiff.  "Under California law . . . whether reliance was reasonable is a question of fact for the jury, and may be decided as a matter of law only if the facts permit reasonable minds to come to just one conclusion."  *IV Sols., Inc*, 2017 WL 3018079, at *7 (citing *Boeken v. Philip Morris Inc.*, 127 Cal. App. 4th 1640, 1666, 26 Cal. Rptr. 3d 638 (2005)).  While Defendant is correct that a Plaintiff's experience, intelligence, and the business environment can be considered, recovery can be denied only when the plaintiff's "conduct is manifestly unreasonable in the light of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 19-2963-MWF (SSx) | Date:  November 25, 2019 |
| Title:     Tony Bobulinski v. Adam Roseman | |

his [or her] own intelligence or information." (*Id*.). The Court determines that, construing all inferences in Plaintiff's favor, the Court cannot say as a matter of law whether Plaintiff's reliance was reasonable. While Defendant, both in his Motion and in Reply, point to all of the steps he believes Plaintiff should have taken, at the motion to dismiss stage Plaintiff's conduct here does not rise to the level of manifest unreasonableness, especially considering the prior, *positive* relationship between Plaintiff and Defendant. This relationship distinguishes Defendant's case law. *See IV Sols., Inc.*, 2017 WL 3018079 at *7 (holding no reliance when Plaintiff had "extensive – and *troubled* – prior business relationship with [Defendant] specifically" when Plaintiff was aware that Defendant "at least sometimes made 'promises, representations, and assurances' of its intent to pay . . . only to later fail to pay") (emphasis added).

Defendant is welcome to conduct discovery to demonstrate that Plaintiff in fact could not have reasonably relied on Defendant's representations here. The Court will decline to cut off such discovery at the motion to dismiss stage.

### 3. Plaintiff's Security Interest in RAAD-Owned Collateral Does Not Defeat His Claim

Defendant next argues that Plaintiff's fraud-based claims fail because Plaintiff "was granted a security interest in the Collateral, regardless of which entity (CBG or RAAD) owed the collateral." (Motion at 16). Because Defendant was the CEO of CBG and the sole member or manager of RAAD, he was allowed to pledge assets held by RAAD, which is the affiliated entity of CBG. (*Id*.). Defendant also notes that Plaintiff himself "made this argument in the Cayman [Litigation]," which "make it implausible that [he] was misled." (*Id*. at 16). Finally, Defendant argues that the FAC's allegation that RAAD was not affiliated with CBG in any way "is at odds with the position [Plaintiff] took in the Cayman [Litigation]." (*Id*.).

In Opposition, Plaintiff first argues that regardless of an alleged security interest, he alleges that he would not have entered into the Note if he knew that CBG did not actually own the Collateral. (Opposition at 15). Second, Plaintiff argues that the fact

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV 19-2963-MWF (SSx) | Date: November 25, 2019 |
| Title: Tony Bobulinski v. Adam Roseman | |

he raised Defendant's argument in the Cayman Litigation is not dispositive, because this very lawsuit is being brought "because of what was uncovered during the Cayman Litigation," specifically, "the falsity of [Defendant]'s statements." (*Id*.). Plaintiff also argues that Defendant's caselaw is distinguishable and is not binding on the Court, because RAAD was only a subsidiary of CBG for one day, months after the Note was signed. (*Id*. at 16-17).

The Court agrees with Plaintiff. The FAC clearly alleges that Plaintiff would not have entered into the Note if he knew that CBG did not actually own the Collateral. (*Id*. at 15) (citing FAC ¶ 29). The fact that Plaintiff may have had a security interest in the Collateral regardless does not rebut Plaintiff's well-pled allegation at this stage. It may very well turn out that, if it is true that Plaintiff had a security interest in the Collateral, Plaintiff may have more difficulty establishing reasonable reliance, causation, or damages. But at the motion to dismiss stage, Plaintiff has sufficiently stated a claim. Additionally, the Court is not persuaded by Defendant's argument that Plaintiff's advancement of an argument which was rejected in the Cayman Litigation somehow bars his recovery here. Plaintiff alleges that he learned of Defendant's fraud for the first time via the Cayman Litigation, the Court must presume that is true at this stage.

The Court also agrees with Plaintiff that Defendant's reliance on *In re WL Homes*, 534 F. App'x 165 (3d Cir. 2013) to support his argument regarding his right to pledge RAAD-controlled assets is misplaced. There, a parent corporation pledged the assets of a wholly owned subsidiary, who had a working relationship with each other. The court there relied on the working relationship and the fact that one entity was the wholly owned subsidiary of the other in determining there was "an enforceable security interest." *Id*. at 171. There is no contention that RAAD is a wholly owned subsidiary of CBG. Thus, even if *In re WL Homes* was binding on this Court, the Court determines it has no application here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 19-2963-MWF (SSx) | Date:  November 25, 2019 |
| Title:      Tony Bobulinski v. Adam Roseman | |

### 4. The Terms of the Pledge Do Not Bar Plaintiff's Claim

Defendant next argues that the "terms of the Pledge Agreement itself confirm that [Plaintiff] was not defrauded." (Motion at 17). Defendant points to the fact that the definition of "Collateral" in the Pledge Agreement was not limited to assets owned by CBG, but instead included "all assets of CBG 'whether now existing or hereafter from time to time arising or acquired.'" (*Id*.) (citing Pledge Agreement ¶ 1). Because the FAC alleges that CBG eventually owned the shares of RAAD prior to CBG's sale to Remark, Defendant argues that there was no deception. (*Id*. at 17-18). Defendant also argues Plaintiff's fraud claim fails because the parties to the Pledge Agreement "specifically contemplated a situation where additional steps would need to be taken by CBG in order to protect [Plaintiff]'s security interest." (*Id*. at 18). Defendant argues that this indicates that Plaintiff "has a set of contractual remedies at his disposal that can remedy any alleged deprivation." (*Id*.).

In Opposition, Plaintiff again argues that the key misrepresentation alleged in the FAC is what assets CBG owned at the time (i) Defendant solicited Plaintiff's financial assistance and (ii) at the time Plaintiff entered into the Note and Pledge Agreement. (Opposition at 17) (citing FAC ¶ 29). Because Plaintiff alleges that he would not have entered into these agreements had he known the truth, Plaintiff argues that his claim survives. (*Id*. at 18). Plaintiff next argues that regardless, "CBG never acquired the Collateral from RAAD anyway" but instead "acquired shares of RAAD months after [Plaintiff] had already entered into the Note." (*Id*.) (citing FAC ¶ 44). Finally, Plaintiff argues that any potential contractual remedies have "no bearing" on Plaintiff's claims because Plaintiff "is permitted to plead as many separate claims as are available to him." (*Id*. at 19).

The Court agrees with Plaintiff. Again, Defendant's primary argument here is that Plaintiff could not have actually relied on the alleged misrepresentation regarding CBG's ownership of the collateral, this time because of language in the Pledge Agreement. At this stage, the Court is not going to ignore Plaintiff's allegations regarding his reliance. Additionally, Defendant fails to cite any case standing for the proposition that a Plaintiff who has sufficiently alleged a claim for fraud in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.   CV 19-2963-MWF (SSx)                            Date:  November 25, 2019
Title:      Tony Bobulinski v. Adam Roseman

inducement of a contract is limited to a breach of contract claim, and many cases hold otherwise.  *See, e.g.*, *Schnabel v. Lui*, 302 F.3d 1023, 1038 (9th Cir. 2002) ("[F]raud in the inducement and breach of contract causes of action can support separate damage awards, provided the actions arise out of different obligations and different operative facts.").

Defendant's cases, which (i) discuss a separate legal theory of fraud and (ii) rely on terms from a contract separate from the agreement plaintiff argues was based on fraud, do not convince the Court otherwise.

### 5.   The FAC Alleges Damages

Defendant next argues that Plaintiff fails to allege damages as required.  (Motion at 19).  First, Defendant argues that Plaintiff has an allowed claim for the amount of the balance of the loan, so Plaintiff cannot claim that amount as damages, considering the CBG liquidation is pending.  (Motion at 19).  Second, as to the legal fees spent on the Cayman Proceeding, Defendant argues those fees "were spent chasing [Plaintiff]'s doomed multiplier claim and would have been incurred regardless of which entity held the relevant assets."  (*Id.*).  Finally, Defendant argues that Plaintiff's alleged inability to invest more money in an unknown "Investment Company" is "entirely speculative" because it is implausible that he was "setting aside funds that would be used two years later to buy into an unnamed venture with other unnamed investors."  (*Id.* at 19-20).

In Opposition, Plaintiff argues that he has sufficiently alleged damages via three theories:  (1) the principal amount of the Note, for $650,000; (2) the legal fees and costs incurred during the Cayman Litigation; and (3) the financial lost opportunity from the Investment Company.  (Opposition at 19-20).  In response to Defendant's first argument, Plaintiff argues that it is "highly unlikely" that Plaintiff will recover his $650,000 investment and he would never receive his entire amount, since the JOLs are claiming that Plaintiff must pay nearly $635,000 in their legal fees.  (*Id.* at 20).  As for Defendant's second argument, Plaintiff argues that had Defendant been truthful he would have never entered into the Note and "there would have bene no need for the Cayman Litigation."  (*Id.* at 21).  Finally, Plaintiff argues that his investment damages

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-2963-MWF (SSx)　　　　　　　Date:  November 25, 2019
Title:　　　Tony Bobulinski v. Adam Roseman

claim is not too speculative because Plaintiff is "a sophisticated investor" who does this "for a living."  (*Id*.).

　　　The Court agrees with Plaintiff.  In the Court's prior order, the Court faulted Plaintiff for alleging "only in conclusory terms that he is entitled to damages."  (Docket No. 22 at 9).  The Court focused on the fact that "Complaint itself fails to allege any facts indicating what exactly Plaintiff's loss was."  (*Id*.).  Here, in contrast, the FAC clearly alleges three categories of damages, all of which Plaintiff would not have suffered but for the alleged misrepresentation by Defendant.  The first two categories of damages both resulted from Plaintiff entering into the Note, and the last category of damages resulted from Plaintiff investing money in CBG.  Defendant may ultimately prevail through discovery in proving that these damages were not actually sustained, or are not connected to the alleged misrepresentation, but at this stage, Plaintiff has sufficiently pled damages.

### 6.　　　The FAC Alleges Causation

　　　Defendant next argues that Plaintiff does not sufficiently allege causation because "the casual chain between [Defendant]'s alleged misstatements and the harm that [Plaintiff] may suffer in the future has been interrupted at least three times."  (Motion at 20).  First, Defendant argues that the chain was broken by CBG's contractual obligations to protect Plaintiff's security interest and refrain from selling the Collateral.  (*Id*.).  Second, Defendant argues that any harm alleged over Plaintiff's allowed claim of $650,000 fails because that is due to Plaintiff's "status as shareholder, and not because of which entity owned the collateral."  (*Id*. at 21).  Third, Defendant argues that the real harm was caused by the expiration of the Maturity Date of the Note, because after the Maturity Date expired Plaintiff became a shareholder of CBG, unprotected by the collateral.  (*Id*. at 23).

　　　In Opposition, Plaintiff argues he has pled causation and that "none of the 'interruptions' [Defendant] references absolve him or break the causal chain caused by his misstatements."  (Opposition at 22).  As to Defendant's first argument, Plaintiff notes that it was the fraud that induced Plaintiff to enter the contract that caused the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-2963-MWF (SSx)                    Date:  November 25, 2019
Title:      Tony Bobulinski v. Adam Roseman

damages, and Defendant "cannot revise the timing of the critical alleged events to exonerate himself after the fact." (*Id*.).  Plaintiff also argues that the Cayman Litigation "would have been unnecessary had [Defendant] not committed fraud." (*Id*.).  Finally, Plaintiff argues that nothing limited Plaintiff's security interest to a one-year period because under the Pledge the security interest continues to "remain in full force and effect until payment and performance in full" of CBG's obligations.  (*Id*.).

The Court agrees with Plaintiff.  Again, Plaintiff's theory of damages boils down to his allegation that he would not have entered the Note except for Defendant's misstatements.  Accordingly, under this framework it is irrelevant whether Defendant still had contractual obligations to protect Plaintiff's security interests, or whether Plaintiff had any contractual right to recover more than $650,000.  Plaintiff alleges he never would have entered into the contract in the first place except for Defendant's fraud, and alleges damages that were proximately caused by entering into the contract.  This is sufficient, at the motion to dismiss stage, to allege causation.

### B.     The FAC Fails to State a Claim for Rescission

Defendant next argues that Plaintiff cannot obtain rescission against Defendant because "[u]nder California law, a plaintiff cannot obtain rescission from a non-party to the contract." (Motion at 23) (citing *Super 7 Motel Assocs. v. Wang*, 16 Cal. App. 4th 541, 549, 20 Cal. Rptr. 2d 193 (1993)).  In response, Plaintiff argues that Defendant, "as a corporate officer, can be found liable for compensatory damages as an ancillary remedy to rescission based on [his] fraudulent misrepresentations." (Opposition at 23-24) (citing cases).

The Court agrees with Defendant.  Plaintiff is correct that the cases cited by him hold that an individual can be "jointly and severally liable" for rescission even if that individual is not a party to the contract.  However, in the cases cited by Plaintiff, the party to the contract *was* a defendant to the action, along with the non-parties who allegedly committed the fraud.  *See Snelson v. Ondulando Highlands Corp.*, 5 Cal. App. 3d 243, 249, 84 Cal. Rptr. 800 (1970) (action against "Ondulando Highlands Corporation" among other defendants for "rescission of [plaintiff's] purchase of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 19-2963-MWF (SSx) | Date:  November 25, 2019 |
| Title:  Tony Bobulinski v. Adam Roseman | |

residential property from defendant Ondulando Highlands Corporation"); *Super 7 Motel*, 16 Cal. App. 4th at 544 ("Appellant sued numerous parties in connection with its purchase of certain property" including "seller.").

Accordingly, the cases cited by Plaintiff do not stand for the proposition that a plaintiff can pursue a claim for rescission against a non-party to the contract as the ***only*** defendant in the action, and Plaintiff fails to cite any cases so holding.

Because CBG, the party to the contract here, is not a named defendant in this action, Defendant's Motion is **GRANTED *with leave to amend***, as to Plaintiff's rescission claim.

### C. The FAC Fails to Allege a Fiduciary Duty

Defendant's final argument is that Plaintiff fails to plead the requisite elements to state a breach of fiduciary duty claim.  First, Defendant argues that Plaintiff "does not allege a confidential relationship" between Plaintiff and Defendant, but instead establishes that they "were individuals who contracted to engage in arms-length business transactions together on occasion."  (Motion at 24).  Defendant also points to the fact that the "core of a confidential relationship is an inequality between the parties because one side of the relationship is particularly vulnerable due to physical or mental incapacity, making the other side exceptionally capable of exerting control."  (*Id*.).  In this case, Defendant argues that if anything, ***he*** was the weaker one as he was the one desperate for funding.  (*Id*. at 24-25).

In Opposition, Plaintiff argues that there was a fiduciary duty owed based on the parties' relationship, and the fact that they had "worked together for over a decade and a half."  (Opposition at 24).  Plaintiff also cites the fact that he invested in many of Defendant's businesses.  (*Id*.).  Plaintiff argues that this relationship "obligated [Defendant] to act with the utmost good faith for the benefit of [Plaintiff] in their business dealings."  (*Id*.).  Plaintiff further argues that Defendant's "desperation to obtain funding for CBG motivated him to use his position of power take advantage of" Plaintiff because Defendant "understood in detail what assets CBG actually owned."  (*Id*. at 24-25).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 19-2963-MWF (SSx) | Date:  November 25, 2019 |
| Title:     Tony Bobulinski v. Adam Roseman | |

The Court agrees with Defendant.  California courts attempting to determine a "confidential relation that gives rise to a fiduciary duty, and the range of the relationships that can potentially be characterized as fiduciary," examine the following "essential elements . . . 1) The vulnerability of one party to the other which 2) results in the empowerment of the stronger party by the weaker which 3) empowerment has been solicited or accepted by the stronger party and 4) prevents the weaker party from effectively protecting itself."  *Richelle L. v. Roman Catholic Archbishop*, 106 Cal. App. 4th 257, 272, 130 Cal. Rptr. 2d 601 (2003), *as modified* (Mar. 17, 2003).  There are no allegations in the FAC that Plaintiff could be considered as having a "vulnerability" with respect to Defendant that led to the empowerment of Defendant.  Plaintiff's cases which hold that a close friendship is sufficient, all of which are over forty years old, do not displace the above.

Thus, the FAC as currently pled does not allege a confidential relationship, or fiduciary duty, between Plaintiff and Defendant.  Accordingly, the Motion is **GRANTED** *with leave to amend* as to Plaintiff's breach of fiduciary duty claim.

## V.     CONCLUSION

For the reasons set forth above, the Motion is **DENIED** with respect to Plaintiff's claims for negligent misrepresentations and fraud in the inducement, is **GRANTED** *with leave to amend* as to Plaintiff's rescission claim and is **GRANTED** *with leave to amend* as to Plaintiff's claim for breach of fiduciary duty.

Plaintiff may file a Second Amended Complaint, if any, by no later than **December 10, 2019**.  Defendant shall file a response to the SAC, if any, by no later than **December 24, 2019**.  Plaintiff is warned that any future motion to dismiss shall be granted without leave to amend.

IT IS SO ORDERED.